[No. 3805.  Decided July 29, 1902.]

MORAN BROS. COMPANY, *Respondent,* v. SNOQUALMIE FALLS POWER COMPANY, *Appellant.*

SALES OF MACHINERY — ACTION FOR PRICE — EVIDENCE — MODELS.

In an action to recover the value of certain heavy machinery manufactured for defendant, in which one of the issues was whether the machinery manufactured according to defendant's designs had been guarantied by plaintiff to stand the strain to which it would be subjected, it was not error for the court to permit the introduction in evidence of wooden models, one of which exactly represented the mechanism designed by defendant's engineer and ordered from plaintiff, and the other the same contrivance as it would have been if made according to the plan recommended by plaintiff.

SAME — SPECIAL DESIGN — CHANGE BY PURCHASER — EFFECT — MEAS-
URE OF RECOVERY.

A manufacturer of machinery under contract may make such
changes, without objection, as may be required by the customer,
and, if the departures from the original plans are such as to
result in a new and substantially different undertaking, he may,
in the absence of any agreement as to compensation for such
changes, recover the reasonable value of the labor and material
so furnished, and will not be limited to the price agreed upon
in the original contract.

SAME — VALUE OF EXTRAS — INSUFFICIENCY OF EVIDENCE.

Although plaintiff may have been entitled to recover, in ad-
dition to contract price, the value of extra work and material
made necessary because of alterations directed to be made after
entering into contract for making machinery of a certain design,
it is not entitled to a recovery when there is no evidence of
the value of such extras other than as contained in a stipu-
lation which recited "that there are included in said account
sundry items, aggregating $1,526.94, which are charged therein
for necessary labor and material performed and furnished in
the making of regulator No. 3, which was furnished by the plaint-
iff to the defendant; the defendant, in connection with this
stipulation, reserving all questions as to whether or not, if plaint-
iff is entitled to make any charge for said regulator No. 3,
the plaintiff is entitled to charge for said items of labor and ma-
terials aggregating the sum last aforesaid, instead of the con-
tract price" of $645, since no evidence of the value of the extra
work and material is shown by the stipulation.

EVIDENCE — ADMISSIONS OF EMPLOYEE.

The admissions of an employee of a corporation, although not
one of its chief officers, are admissible in evidence against the
corporation, when made concerning matters specially intrusted
to him and while acting within the scope of his authority.

INSTRUCTIONS — REFUSAL OF REQUESTS.

The refusal to give instructions as requested is not error,
where the substance is embodied in instructions framed and
given by the court in its own language.

Appeal from Superior Court, King County.—Hon.
WILLIAM HICKMAN MOORE, Judge.  Modified.

*Burke, Shepard & McGilvra,* for appellant.

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—The respondent is, and during the year 1899 was, a corporation, and at said time was operating a foundry and machine shop in the city of Seattle, and was manufacturing and selling castings of iron and other metals, and dealing in manufacturers' supplies generally. At the time above mentioned the appellant was, and still is, a corporation having its principal place of business at Seattle, and was then installing and equipping a power plant at Snoqualmie Falls, Washington, to be operated by water power, with a view to generating electric power for commercial purposes. In erecting its power plant as designed, it became necessary for appellant to have certain castings constituting a device or "system" for regulating the flow of water to its water wheels at its power plant. These castings consisted of certain "regulators," each composed of a "regulator box," "two leaves," and certain other appliances in the interior thereof, and certain elbows and pipes, termed "connecting pieces" or "filling-in pieces," one such elbow and connecting piece accompanying each regulator. The leaves were to be suspended from an iron bar or rod, and were intended to regulate the flow of water through and from the regulator box by opening and closing as required. The elbow was designed to rest on the top of the regulator box. It was rectangular at its base, and circular at the top, where it was connected with the filling (or receiving) pipe, and consisted of two pieces. Appellant had four separate water wheels, and contemplated putting in a regulator, elbow, and filling piece for each wheel. Certain drawings or "sketches" for these castings were submitted by appellant to the respondent, and the

conditions which they would be required to meet when in use were made known, and the respondent was requested to state a price for manufacturing the same. The respondent then made a proposal, by letter, to make one set of castings for a certain price if only one set should be ordered, or for another specified price in case appellant should order as many as four sets. The appellant orally accepted the terms of the proposal, and, pursuant to the contract so made, at various times ordered sets of the castings to be furnished,—in all, four in number. It is in evidence, however, that prior to this proposal and acceptance, the respondent suggested a plan or design for the construction of the regulator boxes, and proposed to guaranty them to stand a working pressure of 125 pounds to the square inch, and a cold water test pressure of 300 pounds to the square inch, if constructed in accordance therewith, but the appellant preferred to have the work done according to the design submitted by it to respondent. Appellant first ordered one set (No. 1) of the castings to be made by respondent. When put in place and subjected to the pressure of the water, one side of the regulator box broke in the groove therein into which the end was fitted in putting the parts of the box together. A new casting was ordered to replace the broken part, and at the same time some changes were made in the interior parts constituting the device for regulating the flow of water through the regulator box. Subsequently regulator No. 2 was ordered and furnished at the contract price, with charges for extra work. Further changes were made by appellant in the interior design of the boxes, and regulators Nos. 2 and 3 were ordered to be made in accordance with the latest revised designs. Regulator box No. 2 also broke when in place and subjected to the pressure of the water under

working conditions at about the same place in the groove where No. 1 had broken. Both regulator No. 3 and the elbow designed for use in connection with it were broken under water tests made at appellant's works and by its workmen before being set in place for use. Before regulator No. 4 was completed, work upon it was stopped by order of appellant, and it appears that no part thereof was delivered to or received by appellant. The appellant having declined to make the payments as demanded for these castings, respondent brought this action to recover the balance which it claimed to be due from appellant on account thereof.

The complaint, after stating that the plaintiff and the defendant, respectively, were corporations, and specifying the business in which each was engaged, alleged "That between the first day of October, 1899, and the first day of February, 1900, the said plaintiff, at the special instance and request of the defendant, and upon its order, sold and delivered to said defendant goods, wares, and merchandise and manufacturers' supplies of the reasonable value of $12,203.13, and for which the said defendant promised and agreed to pay the plaintiff the sum of $12,-203.13, and also, at the special instance and request of defendant, advanced cash for freight and drayage charges on the same, necessary for the due delivery thereof, in the amount of $46.05, making a total of $12,249.18." "4. That no part of said sum has been paid, except the sum of $5,749.10, and there is now due and owing from the defendant to the plaintiff thereon the sum of $6,500.08, with interest at the rate of seven per cent. per annum from the first day of February, 1900." Judgment was demanded for said last mentioned sum. In response to this complaint the defendant, appellant here, demanded, in writ-

ing, a statement of the items of the alleged account, and that it be shown in such statement of the items of said account which of said items have been charged at their reasonable value, irrespective of contract prices, and which of them, if any, are based upon a contract or contracts between said plaintiff and said defendant fixing the amounts to be charged. In compliance with this demand the plaintiff served a statement of account, comprising over 200 separate items, in which it was stated: "To show the charges which were made under a specific contract, plaintiff has written the word 'contract,' and all items other than those so designated were charged by the plaintiff to the defendant for their reasonable value." The only items designated in this statement of the items of account as charges at contract prices were "one regulator No. 2, as per drawings and proposal, $645, and one 4 ft. filling piece, as agreed, and one 4 ft. elbow in two sections, $966." Nearly all the remaining items of the account consisted of charges of the time of laborers in the various departments of respondent's shops, at certain prices per hour, and charges for material—largely iron—used in castings, but some charges were made for other material at specified prices. On receipt of this bill of particulars, the appellant moved that the respondent be required to make its complaint more definite and certain, by pleading separately on the contract items and on the other items of the account, but the court denied the motion. The appellant then answered, denying generally the allegations of the complaint concerning the indebtedness for goods, wares, and merchandise sold, but admitting that the respondent had made and delivered to the appellant regulator No. 2 and the accompanying parts, —the elbow and connecting piece,—and certain new parts of regulator No. 1 to replace broken and defective parts,

and regulator No. 3, under an express contract by which the price of each regulator was fixed at $645, and the price of each elbow and connecting piece at $966, and then affirmatively pleading the contract, and the breach of it by respondent, and that the castings furnished thereunder were defective, etc.    The respondent replied, admitting that a contract had been made, fixing the prices of the castings as stated, and averring that the plaintiff, "pursuant to said contract and certain orders, made and furnished to the defendant three of said sets of castings, complete, of the kind, shape, and dimensions contemplated by said contract."

Numerous witnesses were examined, and a large amount of documentary evidence was introduced upon the trial, but the evidence was mainly directed to the questions (1) whether the castings were made absolutely in accordance with appellant's own design and directions, and whether such design was subject to modification by appellant as to the thickness of the walls of the regulators, and other matters affecting their structure and strength; (2) whether or not the respondent guarantied that the regulator boxes, and the elbows and filling pieces accompanying the same, should stand a cold-water test of 300 pounds pressure to the square inch, or a pressure of 125 pounds to the square inch under working conditions, or both; and (3) whether the breaking of regulators Nos. 1 and 2 was due solely to the steady working pressure that they were expected and understood to stand, or to the defective operation of the interior leaves of the regulator, and whether the cold-water tests applied to regulator No. 3 and to its elbow, under which they broke, were made by proper methods and under proper conditions, or were such as to subject them to a strain greater than 300 pounds to the square inch.    There

was also some controversy over the question whether some of the materials—such as bolts—furnished by the respondent were of good quality. But upon all these questions of fact there was a direct conflict in the testimony, and it is frankly admitted by the learned counsel for the appellant that they are all resolved, so far as this appeal is concerned, in favor of the respondent, by the verdict of the jury. It is also conceded by counsel that this appeal involves only the questions of law raised by certain rulings of the court on the admission of evidence, by certain exceptions to the court's instructions to the jury, and refusals to instruct as requested, and by the motion for a new trial on the grounds of excessive recovery, and insufficient evidence to sustain the verdict as to the value of the labor and material performed and furnished in making regulator box No. 3, and its elbow and connecting piece.

After testimony had been introduced at the trial of the cause as to the original design of the regulators by appellant, the design suggested by the respondent, the breaking of the castings made according to appellant's directions, the making of new castings to replace the broken ones, the changes in the design of the regulators by appellant, the making of regulator No. 3 according to the new design, the furnishing of certain "test plates" by the respondent, and the manner of testing the same, and as to some other minor matters, the respective parties, by their counsel, "in order to save time in the formal proof of the items of the account sued upon," stipulated as follows:

"The defendant stipulates and admits that all the labor and materials charged in the account were performed and furnished in the construction of articles furnished by the plaintiff to the defendant, and that the charges for labor and materials therein specified were at the then prevailing rate for such work and materials at Seattle, and that all

the articles charged as having been furnished to the defendant by the plaintiff were so furnished and delivered; the defendant reserving all questions as to whether said labor and materials were performed and furnished and said articles were furnished and delivered in pursuance of contract for furnishing of the regulators, elbows and filling pieces mentioned in the pleadings, but admitting that all thereof were so performed, furnished and delivered either in pursuance of said contract or in pursuance of request or order therefor otherwise given.

"The plaintiff stipulates and admits, in return, that among the items charged in the bill there are included sundry charges aggregating the sum of $530.35 for four testing plates which were manufactured for and furnished to the defendant by the plaintiff, and that said plates were plates requested by and furnished to the defendant for the purpose with reference to which testing plates were mentioned in the letter of April 7th from the plaintiff to the defendant, the plaintiff reserving, however, all questions as to the place at which and the persons by whom the letter of April 7th contemplated that the plates therein mentioned should be used in testing; and the plaintiff further stipulated that there are included in said account sundry items aggregating $239, charged for the casting and machining of a new side and other new work for regulator No. 1, furnished to the defendant to take the place of one side of said regulator No. 1, which had broken; and the plaintiff further stipulates and admits that there are included in said account sundry items aggregating $1,526.94, which are charged therein for necessary labor and materials performed and furnished in the making of regulator No. 3, which was furnished by the plaintiff to the defendant; and the plaintiff further stipulates and admits that there are included in said account sundry items aggregating the sum of $896.43, which are charged therein for labor and materials performed and furnished in the making of the elbow furnished to the defendant to accompany regulator No. 3; and the plaintiff further stipulates and admits that there are included in said account sundry items

aggregating the sum of $155.70 for labor performed in
the making of a part of regulator No. 4 which was so partly
made in pursuance of the defendant's order of October
11th to make regulators Nos. 3 and 4, and which was in-
tended to be completed and furnished to the defendant in
pursuance of said order, but work upon which was stopped
in January, 1900, upon the order of the defendant.

"The defendant, in connection with this stipulation, re-
serves all questions as to whether or not, if the plaintiff is
entitled, under the law and the evidence, to make any
charge for said regulator No. 3 and said elbow No. 3,
respectively, the plaintiff is entitled to charge for the
same respectively, said items of labor and materials aggre-
gating the respective sums last aforesaid, instead of the con-
tract prices in pursuance of the plaintiff's letter of April
7, 1899.

"The plaintiff admits for the purposes of the defendant's
case, that regulator No. 1 was furnished by the plaintiff to
the defendant early in June, 1899, and was charged to the
defendant at the contract price of $645 on June 2, 1899,
and that the amount of said charge was paid by the de-
fendant to the plaintiff on July 30, 1899; and, further,
that the elbow and filling piece to accompany regulator No.
1, referred to in the evidence as 'elbow No. 1,' were fur-
nished and delivered by the plaintiff to the defendant on
July 10, 1899, at the contract price of $966, and that the
amount of said charge was paid by the defendant to the
plaintiff on August 25, 1899; and, further, that said pay-
ments above mentioned are not included in payments above
admitted by the plaintiff in its complaint to have been made
by the defendant; and the defendant admits that the said
sums charged therefor, towit, for said original regulator
No. 1 and elbow No. 1 and filling piece, are not included
in the items charged in the plaintiff's complaint."

A verdict was returned in favor of the plaintiff for the
full amount demanded in the complaint, including interest
thereon up to the date of the trial. The defendant moved
for a new trial upon several grounds, among which were

(1) error in the assessment of the amount of recovery, in that it is too large; (2) insufficiency of the evidence to justify the verdict, and that it is against law; and (3) errors in law occurring at the trial, and excepted to at the time by defendant. This motion was denied, and judgment was thereupon entered on the verdict, and the defendant, in due time, appealed therefrom to this court.

During the trial in the court below there was, as already intimated, a controversy as to whether the design of the regulator box submitted by the defendant to the plaintiff was adequate to secure the required resistance to internal pressure; whether the plaintiff was required to construct such box absolutely in accordance with that design, or whether the appellant was at liberty, under the agreement, if it so desired, to modify said design as it might deem necessary to secure greater strength, but without affecting the mechanical working of the structure; and as to whether the regulator box, as designed by appellant and manufactured by respondent, was guarantied by the latter to stand the required degree of resistance to internal water pressure under ordinary working conditions. And the respondent was permitted, over the objection of the appellant, to introduce in evidence before the jury two wooden models, one of which, according to the evidence, exactly represented the regulator box, on a reduced scale, actually made by respondent, as designed by the appellant's engineer, and the other of which represented, on a like scale, the box as it would have been if made according to the plan suggested by the respondent. The object and purpose of introducing the first above mentioned model in evidence was to show to the jury the plan and character of the structure which Mr. Moran, a witness and the president of the respondent corporation,

testified, in effect, had failed to fulfill the requirements as to strength because of its faulty design. The second model was used to illustrate the construction of the regulator box as recommended by the respondent, and which it claims it proposed to guaranty to withstand the internal pressure required under working conditions. This latter model differed from the first only in the size and shape of the strengthening ribs, and the manner of connecting the end and side pieces of the box. In every other respect they were exactly alike. It is claimed by appellant that the trial court erred in admitting these models in evidence. Counsel for the appellant admit, however, that it would have been competent for the respondent to bring into court, and exhibit before the jury as evidence in its behalf, one of the regulator boxes in question; but they assert that it was irregular and improper to allow the respondent to produce in court a representation of that article of a different size and material, and made for the sole purpose of the suit, and then by its aid to "exploit" before the jury the theories of the respondent or its engineer as to faults in the design. But we are unable to agree with counsel in this criticism of the court's action. If it would have been competent to introduce the regulator box itself in evidence, as stated,—and that proposition is not disputed,—it is difficult to understand how a mimetic representation of it could have prejudiced the appellant. The jury could not have obtained a clearer knowledge of the construction of the box by an examination of it than they did by an examination of the model. And besides, it is in evidence that the regulator box weighed several thousand pounds; it would therefore have been extremely inconvenient, if not impracticable, to produce it in court. One of the questions at

issue before the court and jury, it will be remembered, was whether or not the respondent had guarantied the adequacy in point of strength of the box as designed by appellant, and so made by respondent; the respondent claiming that the joints uniting the ends and sides in appellant's design were too weak to bear the required pressure, and that its proposed warranty went only to a type of joint recommended by it, and illustrated by a model produced in court.

It was said by the supreme court of Georgia in *Augusta & S. R. R. Co. v. Dorsey,* 68 Ga. 228, that "A model may be taken by a party to a suit to illustrate any article of machinery involved in the issue on trial, without notice to the opposite party." There the admission of the model was objected to on the ground that it was *ex parte,* and that there was no notice of the intention to take it; and that is one of the objections urged here to the admissibility of the models in question. The tendency of the courts is to encourage the use of models to illustrate mechanical devices, as by that means the jury are often enabled to acquire a better understanding of the particular machine or article of machinery involved in the controversy before them than could possibly be obtained by the unaided testimony of witnesses. *McMahon v. Dubuque,* 107 Iowa, 62 (77 N. W. 517, 70 Am. St. Rep. 143). See, also, *Pennsylvania Coal Co. v. Kelly,* 156 Ill. 9 (40 N. E. 938) ; *American Express Co. v. Spellman,* 90 Ill. 455; *Augusta & S. R. R. Co. v. Dorsey, supra.* We are of the opinion that the court did not err in admitting the models in evidence.

It is also insisted that the trial court erred in admitting evidence of statements made by one Tingley, one of the engineers of the appellant, to the respondent's draughtsman, as to the actual working of the regulator box as first

constructed, and the shocks to which it was subjected in its operation. It appears from the evidence that, after regulator box No. 1 broke, it was sent back to respondent's shops, and a new one ordered, to replace it. This order was given by Mr. Tingley, together with an order to change the type of leaves in the regulator box and the ribs designed to stiffen or brace the outside of the box. The respondent was permitted to prove, over the objection of the appellant, the statements of Mr. Tingley to the effect that the leaves of regulator No. 1 stuck on their seats, and, when it was attempted to operate them, they would not move until the accumulated pressure had forced them out against the sides of the box, thus causing a sudden increase of pressure or shock on the box. This testimony was objected to on the alleged ground that it was not shown that Mr. Tingley stood in such a relation to the appellant as to entitle his statements to be received in evidence against it. It may be true, as counsel for appellant state, that Tingley was not one of appellant's chief officers; but the evidence shows beyond controversy, we think, that he was not only an active agent of appellant, but that he had more to do with the work done by the respondent than any other person in the employ of the appellant company. The statements objected to were made by Tingley while in the discharge of his duties as agent, and were therefore admissible against his principal, namely, the appellant.

"The admissions and representations made by an agent of a corporation, acting within the scope of his authority, and concerning matters entrusted to him, are binding upon the corporation." 2 Cook, Corporations (4th ed.), § 726.

It follows from what we have said that the declarations in question were properly admitted in evidence.

20—29 Wash.

It is further contended that the court erred in refusing to give to the jury instructions Nos. 2, 3, 4 and 5 requested by appellant.   These instructions are as follows:

"2.   One who agrees to furnish a manufactured article for a special purpose, and who furnishes it in pursuance of such agreement, is, in law, in the absence of a special agreement to the contrary, bound by an implied warranty that the article shall be fit for the purpose to which it is intended by the purchaser to be put, and adequate to the necessary conditions under which it is to fulfill the purpose, if such purpose and such conditions were made known by the purchaser at the time of the agreement to furnish the article to him.

"3.   When a manufacturer agrees to make for and sell to a purchaser an article which is intended by the purchaser to be used, and which the manufacturer, when the order is given, knows is to be used, for a specific purpose, and under specific conditions of use, the law implies a warranty on the part of the manufacturer, in the absence of a special agreement or understanding between the parties to the contrary, that the article so made and furnished shall be reasonably fit for and adequate to the service for which it is intended, and in which the manufacturer knew, when undertaking to make and sell it, was intended to be used.

"4. When one submits to a manufacturer a design for a machine or appliance which he desires the manufacturer to make for and furnish to him, and the manufacturer is informed of the use to which it is intended to be put, and the conditions which it must meet in order to perform the intended service, the manufacturer, in undertaking to make and sell such machine or appliance in accordance with such design, impliedly warrants its sufficiency for and adequacy to the service to which it is intended to be put, under the necessary conditions of that service, unless he objects to such design as inadequate, or protests against it, or otherwise expressly relieves himself from responsibility.

"5.   When a manufacturer has made a contract with a customer, agreeing to furnish a number of duplicate

articles of a specified design or character at a specified price for cash, and the customer, after one or more of such articles have been furnished in pursuance of the contract, directs changes to be made in the design or details of the article,—its identity and general character remaining unchanged,—the contract remains binding upon the manufacturer as to the price of the article, excepting that the manufacturer is entitled to make such additional charge therefor as will reasonably compensate him for the additional labor and materials necessitated by the changes ordered, and afford him a reasonable profit thereon.   He is not entitled to disregard the contract, and to charge whatever he considers the reasonable value for furnishing one of the articles under the altered design or detail, unless he has refused to go on with the manufacture thereof after the changes are ordered, on the basis of the contract, and has so notified the customer."

It will be observed that instructions numbered, respectively, 2, 3 and 4, requested by appellant, all relate to the subject of implied warranty.   And it is stated in appellant's brief that they all amount to about the same thing (which is true), with mere variations of phraseology, so that the court might make its choice between the different forms.   The court below instructed the jury that there was an express warranty on the part of the respondent that the elbows and filling-in pieces would stand a working pressure of 125 pounds to the square inch when put to the use intended by appellant.   Concerning the regulator boxes, the court adopted the theory of the appellant, and instructed the jury as follows:

"As to the regulator boxes, you are instructed that if you believe from the evidence that the defendant submitted to the plaintiff a design for said boxes, and informed the plaintiff of the use to which they were intended to be put, and the conditions which they must meet in order to perform the intended service, then the plaintiff, in under-

taking to make and sell such boxes in accordance with such design, impliedly warranted their sufficiency for and adequacy to the service for which it was intended they should be put, under the necessary conditions of that service, unless you find from the evidence that the plaintiff objected to such design as inadequate, or protested against it, or otherwise relieved itself from responsibility therefor," etc.

It will be noticed that this instruction, as given by the court, not only embodies the substance of each of the three which were requested by the appellant, but is couched in terms almost identical with the language of instruction No. 4 requested by appellant. And that being true, the appellant has no just ground of complaint, so far as the instructions in question are concerned. Nor did the court err in refusing to give to the jury the fifth instruction requested by the appellant. Although this request is, in the main, correct and unobjectionable, it is not wholly so, and for that reason was properly refused. It is faulty in that it states, in the closing part thereof, that a manufacturer "is not entitled to disregard the contract, and to charge whatever he considers the reasonable value for furnishing one of the articles under the altered design or details, *unless he has refused to go on with the manufacture thereof after the changes are ordered on the basis of the contract, and has so notified the customer.*" None of the authorities cited by appellant support this proposition, and we have discovered none that does. We think the doctrine fairly deducible from the authorities, in cases of this or like character, is that the manufacturer or builder, as the case may be, may go on with the work, and make such changes as may be required by the customer or owner, without objection, and, if the departures from the original plans are such as to result in a new and substantially

different undertaking, he may, in the absence of any agreement as to compensation for such changes, recover the reasonable value of the labor and material so furnished, and will not be limited to the price agreed upon in the original contract. *Rhodes v. Clute,* 17 Utah, 137 (53 Pac. 990), and cases cited therein; *County of Cook v. Harms,* 108 Ill. 151. But where work is done under a special contract, and there is a deviation from the original plan, not amounting to a new undertaking, the contract price is the measure of payment, as far as the contract can be traced and applied, but no further, "and for his extra labor the party is entitled to his *quantum meruit.*" *Dubois v. Delaware & H. Canal Co.,* 4 Wend. 285. See, also, *McKinney v. Springer,* 3 Ind. 59 (54 Am. Dec. 470); *Norton v. Browne,* 98 Ind. 333.

We are not convinced by the evidence in this case that regulator box No. 3, as made by the respondent, was so variant from the original design that the respondent was entitled to treat the contract as abandoned, and to recover the value of all the labor performed and material used in its construction, without reference to the contract price. The interior leaves were heavier, the suspending bar larger and stronger, and the side and end pieces perhaps thicker, than the original design and contract called for, and a "cross-head" device was attached to the leaves, but the identity and general character of the box was not changed. Neither its form nor interior dimensions were varied; and all the respondent had the right to recover as compensation for its construction, as the learned trial court in its charge intimated to the jury, was the contract price ($645), together with the reasonable value of the labor and material necessitated by the change of the original design. But we find no proof whatever in the record

of the value of the extra work performed and the extra material furnished by the respondent in the making of this regulator box. It was admitted and stipulated, as will be noticed, by the respondent, "that there are included in said account sundry items, aggregating $1,526.94, which are charged therein for necessary labor and materials performed and furnished in the making of regulator No. 3, which was furnished by the plaintiff to the defendant, .    .    .    the defendant, in connection with this stipulation, reserving all questions as to whether or not, if the plaintiff is entitled, under the law and the evidence, to make any charge for said regulator No. 3,    .    . .    the plaintiff is entitled to charge for said items of labor and materials aggregating the    .    .    .    sum last aforesaid, instead of the contract price," etc. It was also stipulated that the charges for labor and materials specified in the account were at the then prevailing rate for such work and materials at Seattle. The respondent relied upon the stipulation alone as proof of its claim for the whole $1,526.94 charged for regulator No. 3, but that did not evidence either the amount or value of the extra work and material rendered necessary by the change of design made by the appellant. And it therefore follows that the point made by the appellant that the evidence is insufficient to justify the recovery of a greater sum than $645 for regulator No. 3, and that the lower court erred in refusing to set aside or reduce the verdict on that ground, is well taken.

The judgment, being clearly too large by the sum of $881.94, and the interest on that sum found due by the jury, must be modified and reduced to that extent; and the cause is therefore remanded to the superior court with

instructions to modify the judgment in accordance with this opinion. The appellant will recover its costs.

REAVIS, C. J., and FULLERTON and MOUNT, JJ., concur.