[No. 12716. Department One. July 21, 1915.]

LEE HONG, *Respondent*, v. E. SCHOENWALD *et al.*,
*Appellants*.[1]

CONTRACTS—PERFORMANCE OR BREACH—EVIDENCE — ADMISSIBILITY.
Upon an issue as to whether a shortage in a salmon pack was due
to the fault of the plaintiff and his crew of packers, or to the failure
of the defendant's machinery and equipment which he had agreed
with plaintiff to furnish and keep in repair, evidence as to the de-
fective and worn-out condition of the machinery at the beginning
of the season and describing its then condition, and that it fre-
quently broke down and failed to work properly, is admissible as
tending to show defendant's breach of contract.

SAME—PERFORMANCE OR BREACH—ADMISSIONS AGAINST INTEREST—
STATEMENT OF AGENT. In such a case, evidence of the statement
made by defendant's cannery foreman in charge of the plant, upon
plaintiff's complaint as to the defective condition of the machinery,
that it was left in bad condition the year before, and "no man in
the United States could fix it," is an admission of defendant's *alter
ego* against interest, and is not inadmissible as a mere expression
of opinion.

PLEADINGS—VARIANCE — MATERIALITY — SHOWING. A variance in
the admission of evidence tending to somewhat broaden the scope
of the issues is nonprejudicial, where no continuance was demanded
and no showing made that the party was misled to his prejudice, in
view of Rem. & Bal. Code, § 299, providing that no variance shall be
material unless it actually misleads the party to his prejudice, and
providing that the fact shall be shown to the satisfaction of the
court, and for amendments to the pleadings on such terms as may
be just.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered February 15, 1915, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action on contract. Affirmed.

*Winfield R. Smith*, for appellants.

*R. W. Wilbur* and *Jesse A. Frye*, for respondent.

[1]Reported in 150 Pac. 436.

Holcomb, J.—In the spring of 1913, plaintiff and the Pacific Coast & Norway Packing Company, a fish canning concern, entered into a written agreement whereby plaintiff agreed to furnish the cannery crew for the packing season of 1913, and to pack, lacquer, and label the cans for nine hundred cases of flat cans or thirteen hundred cases of tall cans of salmon, each day during the packing season, and in case of failure, plaintiff should pay the company for the shortage one dollar per case as liquidated damages. The agreement covered every phase of the work. It contains a proviso that:

"If such shortage of pack arises from the failure on the part of the party of the second part to furnish sufficient fish and other material or facilities or from failure of machinery to do the proper work, no charge shall be made for such shortage."

Plaintiff alleged full performance of the contract, and that he had earned $20,848.81, and had been paid $12,385.90, leaving an unpaid balance of $8,462.91, for the recovery of which this action was brought. The defendant company made answer, admitting that, had plaintiff fulfilled his contract, he would have earned the total sum alleged in the complaint, but denied performance by plaintiff, and denied that he had earned so much as the amount paid. The defendant further affirmatively set up in its answer that, without fault on its part, plaintiff fell short of the agreed pack a total of 11,200 cases between July 23 and August 17, 1913, as tabulated in the answer, and further, that plaintiff failed to label as agreed, and that defendant was compelled in consequence to pay out the various sums specified, aggregating some $2,200, making a total damage to the defendant of $13,432.92, and a consequent net overpayment by mistake to the plaintiff of $4,965.66, for which amount, over and above plaintiff's claim, defendant demanded judgment. By way of reply, plaintiff alleged that any shortage was due, not to his fault, but to the fault and neglect of defendant in the fol-

lowing particulars: Failure to furnish sufficient fish; failure
of machinery; failure to keep the machinery in repair and
operation so as to enable the plaintiff to pack the required
amount; and failure on the part of the defendant to furnish
sufficient steam and power to operate the cannery adequately.
After the issues were joined, the defendant company went
into the hands of receivers, and the receivers were thereafter
duly substituted for the company. The case was tried to
a jury, which rendered a verdict in favor of respondent for
$7,167.02, with interest from December 1, 1913.

By stipulations and admissions, the issues of the pleadings
were simplified and narrowed to the single question whether
the shortage in pack between July 23 and August 17, 1913,
and the outside labeling, which the defendant had done at
Seattle, were the fault of plaintiff, as defendant claimed, ow-
ing to his crew being insufficient in number and incompetent
and inefficient; or, as plaintiff claims, were due to the effect
of insufficient machinery and equipment furnished by defend-
ant, which plaintiff contends put it out of his power to do
the packing and labeling. There is no dispute as to the
shortage.

I. Appellants first complain that it was error for the
court to admit evidence showing the condition of the cannery
and machinery prior to July 23, 1913, after which time, un-
til August 17, 1913, the cannery company claimed the short-
age occurred. Under the contract it was the duty of the
company to furnish the machinery, equipment, material, and
facilities for the cannery crew to can, pack, lacquer, and
label the cans and cases of fish. The respondent and his
crew arrived at St. Petersburg, Alaska, where the cannery
was situated, about the middle of April, 1913. The com-
pany's operatives also arrived about the same time. There
was a machinist who had been employed and was engaged in
overhauling the machinery, so as to put it in shape for oper-
ation from about that time until about the first of June, when
the canning operations commenced. The machinery and

equipment were fully described by witnesses who had been employed in overhauling, repairing, and putting it in shape to run. The respondent and the machinist who had been employed by the company testified as to the general appearance of the machinery when they arrived there, to the effect that it was old, worn, and rusty; that it was rusted so badly that, in order to take it apart and repair it, numerous parts had to be broken off and new parts supplied or old parts made over, and that it had been so left at the close of the season of the year before that this condition existed. This evidence was naturally inferential and was not improper.

Authorities are cited by appellants to the effect that the testimony of the condition of the machinery causing injury, some time before the injury occurred or some time subsequently, without any connective showing of the existence of that condition continuously to or from the time of the injury, is improper. With those authorities we agree, but they are not applicable here. Testimony of conditions subsequent to the matter in controversy is in most cases improper, for the logical reason that presumptions do not generally run backward. The evidence here tended to show that the condition of the machinery was evidenced by the condition that it had been left in, and that it was apparent and obvious. There was considerable evidence tending to show that the machinery frequently broke down and frequently refused to work properly, and that the failure of the machinery and appliances was the principal cause of the respondent's inability to furnish the required quota of packed fish during the time from July 23 to August 17, 1913. The fact that the witnesses detailed the condition of the machinery when they arrived there before the canning operations commenced would tend to throw some light on the question, from which the jury might determine whether or not it was the failure of the company's machinery, equipment, and appliances that caused the shortage during the period mentioned. We think there was no error in admitting the testimony. Jones, Evi-

dence, § 58; 1 Greenleaf, Evidence (16th ed.), p. 81; Wigmore, Evidence, § 437.

II.   It is urged that it was error to permit respondent and other witnesses to testify to statements said to have been made to them by the cannery foreman, Robertson, as to machinery and cans, these not being in any wise binding as admissions or otherwise upon the company.   Robertson was in general charge of the plant and machinery and had charge of its operation for the defendant company.   In that respect, therefore, he was. its *alter ego*.   There is testimony that the respondent complained to Robertson of the defective condition of the machinery, by reason of which at the time in question he was unable to pack the required number of cases of fish per day, and that Robertson stated that "the machinery had been left in bad condition at the close of the previous season, and that no man in the United States could fix it."   The court admitted these statements on the theory that they were admissions of defective condition.   Appellants contend that they were mere exclamations or expressions of opinion.   But there is nothing in the record to bear counsel out as to this contention.   If Robertson made such statements he was, as the agent of the principal in control of the machinery, as capable of making an admission against interest as the company itself.   In fact, he probably knew more of it than any of the executive officers of the company.   An admission on his part would, therefore, be of greater weight than an admission by any officer, executive or otherwise, of the company.   It is claimed, however, that, even if he made such admissions, he was not authorized so to do, such statements not being in connection with the duties of his employment.   This contention is untenable.   This man was in charge and had direct supervision of the repairs and renovations which had been attempted on the machinery, and was in charge of the operation of the machinery during the canning operations.   The statements made by him concerning the matters directly in

his charge were statements made by the company. Jones, Evidence, §§ 356, 357; 2 Thompson, Corporations, § 1620.

III. Appellants complain that, upon the pleadings in the case, it was error to admit evidence tending to show that the cans furnished by defendant to respondent were rusty and defective. It is true that the introduction of this testimony tended to somewhat broaden the scope of the issues tendered by respondent's reply to defendant's affirmative answer. The appellants, however, had pleaded generally that, without fault on the part of the defendant, the shortage had occurred. Respondent pleaded, in avoidance of this allegation, that the failure, if any, on his part was caused by certain enumerated faults and failure on the part of the defendant company to comply with its part of the agreement, which, being in avoidance of appellants' affirmative matter and counterclaim, were properly pleaded affirmatively. The matter of the defective cans was not specially pleaded in avoidance in respondent's reply, and it is true, in general, that proofs without averments and averments without proofs, are equally unavailing. Our code of pleading, however (Rem. & Bal. Code, § 299), provides that:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just."

In *Olson v. Snake River Valley R. Co.*, 22 Wash. 139, 60 Pac. 156, this court, per Fullerton, Judge, said:

"The object of these provisions of the code was to correct the harshness of the common law rules relating to variance. They were intended to prevent a suitor having a meritorious cause of action from being thrown out of court, or a defendant having a valid defense from presenting that defense, for mistakes in his pleadings which do not affect

the merits of the controversy, or prejudice the rights of his adversary. Hence, under the rule of the code, it avails a litigant nothing to show a variance between his adversary's pleadings and proofs without showing a resulting injury. It must appear that he was, to repeat the language of the code, 'misled . . . to his prejudice, in maintaining his action or defense upon the merits.' Further, it will be noticed the statute requires the showing of prejudice to be made to the trial court, whose duty it then becomes to determine its sufficiency. If the court finds, upon such showing, that the adverse party has been misled to his prejudice by the variance—finds that the variance is material—it may order the pleadings amended upon such terms as may be just; . . . From these considerations this court will not presume error prejudicial to the complaining party simply because it may find a variance between the pleadings and proofs of his adversary."

On this point appellants rely largely upon the language of this court in *Oldfield v. Angeles Brewing & Malting Co.*, 72 Wash. 168, 129 Pac. 1098, quoting the language of the court as follows:

"This rule, however, has no application where the evidence has been introduced over objection and the issue tried was in no manner tendered in the complaint. . . . No leave to amend was requested. No rule of construction, however liberal, can permit the trial of an issue not tendered in the complaint over the objection of the defendant. To permit such a course would be to ignore the statute, dispense with formal pleadings, and invite endless confusion."

In that case, however, it is pointed out that the plaintiff in his complaint entirely mistook his cause of action. He based his cause of action upon an allegation of indebtedness due for a certain number of months' rental under a lease. The evidence in support of the complaint showed that there was a breach of an agreement to lease, and that the breach was made by the refusal of the intending lessee to accept the building. This court said:

"In such a case, the cause of action is entire and the measure of damages is the loss suffered, namely, the differ-

ence between the entire rent reserved and the entire rental value for the term. It is obvious that the complaint, which did not tender as an issue that there was such a difference, did not allege any loss or damage, and hence did not state a cause of action."

In that case it was further shown that the appellant, at the commencement of the trial, objected to the introduction of any evidence on the ground that the complaint failed to state a cause of action, and upon the court's overruling the objection, the defendant then moved for a continuance in order to prepare to meet the issue of damages which was not presented by the complaint, but the court denied the continuance. In this case, appellants did not demand a continuance, and did not in any way show to the trial court that they were misled to their prejudice. The admission of the evidence was, therefore, an unprejudicial variance. *Cunningham v. Lakin*, 50 Wash. 394, 97 Pac. 447; *Peterson v. Barry*, 50 Wash. 361, 97 Pac. 239; *Lang v. Crescent Coal Co.*, 44 Wash. 267, 87 Pac. 261; *Kneeland Investment Co. v. Berendes*, 81 Wash. 372, 142 Pac. 869.

IV. Error is also claimed by appellants because of the admission of evidence showing that the company did not furnish respondent with sufficient light. What we have said with reference to the claim regarding the furnishing of rusty cans applies as well to this claim of error.

Judgment affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and PARKER, JJ., concur.