[No. 36591.    Department Two.    February 27, 1964.]

DAVID HARTMAN, *Respondent,* v. PORT OF SEATTLE,
*Appellant.*\*

*\*Reported in 389 P. (2d) 669.

*Brethorst, Fowler, Bateman, Reed & McClure,* for appellant.

*Ferguson & Burdell, W. Wesselhoeft, J. Richard Manning,* and *Raymond E. Brown,* for respondent.

HUNTER, J.—This is an appeal from a judgment for the plaintiff (respondent), David Hartman, entered in an action brought against the defendant (appellant), Port of Seattle, to recover damages for personal injuries.

In 1958 and 1959, the Port of Seattle was expanding the Seattle-Tacoma Airport and the Service Electric Company, Inc., was awarded a contract to perform certain wiring. The electrical power, which up to this time had supplied the airport facilities, was brought onto the airport property through power lines called a "feeder system." This "feeder system" consisted of three electrical cables that traveled underground through a series of manholes connected by underground ducts. The Service Electric Company contracted to replace the old cables with larger cables that were capable of carrying four times more current. The system was put in approximately 10 years earlier when the airport was built. The cables were designed to last 30 to 50 years.

On the day of the injury, the plaintiff, who is a journeyman electrician employed by the Service Electric Company, and his foreman were engaged in the process of identifying the cable. The foreman was in manhole No. 12 and the

plaintiff was in manhole No. 13. The identification was made by pulling back and forth on the cables and marking them with pieces of tape. The power was on, and the cables were each carrying the normal operating voltage, 4,160 volts. As they were performing the identification, the foreman heard the plaintiff scream and immediately thereafter the plaintiff was found face down on the floor of the manhole. He was removed and found to have been badly burned on his head, left arm, back and left leg. The palm of the left hand was very shrunken and black. Thereafter, one of the cables was found to have a burned spot on it.

At the time of the accident, the plaintiff was not using any rubber gloves, insulated platform, or electrician's gloves. The defendant's resident engineer had observed the work being done without these safety precautions. The plaintiff did not remember whether he was pulling on the cable.

The defendant presented expert testimony that the identification of the cable should not have been made with the power on; that pulling barehanded on energized cable carrying 4,160 volts is not a customary practice used by electricians to identify cable; and that the use of protective equipment is mandatory. On the other hand, plaintiff produced expert evidence that the cable of this age, make and model was widely used and was safe to touch without gloves. A journeyman electrician testified that it would be customary for journeymen electricians in the plaintiff's union local to handle this cable barehanded.

It was shown that 6 months before this accident the defendant's maintenance electricians observed an unusual spot in the insulation on a wire in manhole No. 13. When they cut the lacings which bound the cables together and started to separate them, there was a large flash as the current arced to a nearby pull wire causing the main north feeder circuit breaker to trip or "kick out." The cable was then spliced and wrapped with high voltage tape. This was a different cable, but in the same manhole, as the one causing injury to the plaintiff. Neither the plaintiff nor his foreman was ever advised of the prior arcing incident.

The expert testimony was in conflict as to whether the plaintiff's burn came from a defect in the insulation which was caused by the prior arcing in the adjacent cable. Plaintiff's experts testified that a "hi-pot" test should have been performed and that if one had been performed it probably would have revealed the defect that caused the plaintiff's burn.

The plaintiff brought this action alleging that the defendant was negligent (1) in failing to provide or maintain a safe place for the plaintiff to work; and (2) in failing to warn plaintiff of a condition unreasonably dangerous to plaintiff of which the defendant knew, or reasonably should have known, and of which the plaintiff neither knew, nor reasonably should have known. Defendant denied negligence and alleged that the plaintiff was guilty of contributory negligence (1) by handling high-tension electrical cables without taking adequate safety precautions and without using safety equipment; and (2) in attempting to mark high-tension electrical cables in a negligent and careless manner not in conformance with the standard of care required under the circumstances and conditions existing at the time. The jury returned a verdict in favor of the plaintiff upon which judgment was entered. The defendant appeals.

The defendant assigns error to the refusal of the trial court to find that the evidence was insufficient to establish the defendant's negligence as a matter of law. The plaintiff was an employee of an independent contractor, and as such enjoyed the status of an invitee. The duty owed to an invitee is to exercise reasonable care to maintain the premises in a reasonably safe condition, or to warn the invitee of any danger which is known or discoverable by a reasonable inspection on the part of the occupier and not known or not discoverable by the invitee using reasonable care for his own protection. *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn. (2d) 647, 364 P. (2d) 796 (1961); Restatement, Torts § 343. The defendant argues that the plaintiff failed to produce any evidence that there was a condition which the defendant knew, or reasonably

should have known, that involved an unreasonable risk to the plaintiff other than that inherent in the work.

This argument is not supported by the record. There was evidence in the record from which the jury could conclude that the prior arcing incident in manhole No. 13 did affect the other cables in the manhole. Plaintiff's expert, Warren Wehmeyer, a consulting professional engineer, testified that where there is a failure in a cable, a good deal of heat energy is transmitted to the adjacent cables and that such heat energy would have a detrimental effect on the insulation of the adjacent cables. Once the insulation is perforated, moisture and dirt can enter and travel along the interior of the cable, causing a weak point to occur in the insulation. Here no tests were made on the adjacent cables following the first arcing to ground incident. Wehmeyer testified that if a "hi-pot" test had been performed, there is reasonable probability that the weak point would have been discovered. He said the normal custom is to make such a test. The trial court correctly refused to find that the evidence was insufficient to establish the defendant's negligence as a matter of law.

The defendant contends that the trial court erred when it refused to find that the plaintiff was contributorily negligent as a matter of law. The defendant submits that the plaintiff handled these high-tension electrical cables without taking adequate safety precautions, and that he was, therefore, negligent when he attempted to identify the cables.

The evidence most favorable to the plaintiff does not justify this conclusion. Gordon Bailey, an expert witness who was an electrical construction foreman, testified that it was the general practice to handle unshielded cable carrying 4,160 volts with bare hands. He testified that he would pull the cable with his bare hands even if it had a splice on it, if it otherwise looked good. Both the plaintiff and Bailey testified that it would be difficult to carry out the phasing operation with rubber gloves, and that efficiency would be reduced if gloves were worn. Plaintiff's expert witness, Warren Wehmeyer, testified that he had seen cable pulled barehanded many times. He also said that the frequency

of defective insulation on primary feeder cable during the ordinary life of the cable was one failure per hundred years per mile of cable. The plaintiff said he did not know that the insulation was breaking down or that there had been a prior arcing incident.

The above testimony constitutes substantial evidence from which the jury could conclude that there was no contributory negligence. The assignment of error is therefore without merit.

■ The defendant assigns error to the trial court's refusal to hold that the plaintiff assumed the risk of injury as a matter of law. An essential element in the doctrine of assumption of risk or the maxim of volenti non fit injuria is the voluntary exposure by a person to a known peril or danger. *Bailey v. Safeway Stores, Inc.*, 55 Wn. (2d) 728, 349 P. (2d) 1077 (1960). In the instant case, the plaintiff had never been told by the resident engineer who was observing the phasing operation that the insulation was breaking down. Neither was he aware of the prior arcing incident. The jury could therefore find that the plaintiff did not understand the danger, and that he did not voluntarily expose himself to it. The ruling of the trial court was correct.

The defendant contends that the trial court erred in permitting plaintiff's witness, Dennis McFeely, an attorney formerly associated with counsel for plaintiff and presently with the Federal Trade Commission, to testify concerning certain statements made to him by defendant's resident engineer, Edward Stitch; that it was error to refuse to strike that testimony and to deny a new trial on the ground that the testimony was improperly admitted.

McFeely testified that after the accident Stitch had told him that the reason they were removing the cable and replacing it was that the insulation on the cable was "breaking down" and needed to be replaced. In the company of Stitch, he examined a crack in the insulation and Stitch had said that the crack was an example of the breaking down of the insulation.

The defendant argues that the plaintiff did not establish that Stitch was speaking on a subject within the scope of his employment, or that he was an agent authorized to speak on the subject by his employer to third persons.

■ The general rule governing admittance of admissions by agents is found in Restatement, Agency (2d) § 286:

"In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter."

Comment (c) of § 288 states:

" . . . To make evidence of an agent's statements admissible against the principal under the rule stated in Section 286, it is not enough that the principal is willing or permits the agent to speak. The speaking must be done in the capacity of agent and be connected with the business of the principal. . . . If his authority is to make statements only to particular persons or upon a particular occasion, the principal is not affected by statements made by him to other persons or upon other occasions."

*Cf. Moran Bros. Co. v. Snoqualmie Falls Power Co.,* 29 Wash. 292, 69 Pac. 759 (1902); *Lee Hong v. Schoenwald,* 86 Wash. 326, 150 Pac. 436 (1915); *Tacoma & Eastern Lbr. Co. v. Field & Co.,* 100 Wash. 79, 170 Pac. 360 (1918); *Harry v. Northern Pac. R. Co.,* 105 Wash. 469, 178 Pac. 465 (1919); *Liljeblom v. Department of Labor & Industries,* 57 Wn. (2d) 136, 356 P. (2d) 307 (1960).

At the time of the accident Stitch was the resident engineer of the defendant. His duties encompassed: (a) collaborating with consulting professional engineers with respect to preparation of work schedules; (b) co-ordinating electrical construction work with the airport's day-to-day electrical needs, including conferences with airport maintenance electricians; (c) seeing that the construction specifications were followed; (d) conferring with the contractor; (e) rendering daily reports to the field supervisor; (f) rendering periodic reports to the assistant chief engineer; and

(g) making reports of all accidents. Under these circumstances, we are satisfied Stitch was qualified and had sufficient knowledge and responsibility to constitute a speaking agent. His principal was bound by admissions made while speaking on a subject within the scope of his employment. *Griffiths v. Big Bear Stores*, 55 Wn. (2d) 243, 347 P. (2d) 532 (1959).

The defendant contends that the trial court erred in refusing to admit testimony concerning the electrical workers' safety rules of the Department of Labor and Industries. The defendant argues that even if these safety rules do not have the force of law, nevertheless they reflect a standard of care accepted by the electrical industry and therefore furnish a proper basis for examination and cross-examination.

■ We believe the ruling of the trial court was correct. The general rule is stated by the author in 75 A.L.R. (2d) 778 at 780:

"The majority rule is that evidence of codes or standards of safety issued by governmental bodies as advisory material, but not having the force of law, is not admissible on the issue of negligence, . . ."

So-called standards which do not have the force of law are nothing more than the unsworn opinions of their authors and the authors are not subject to cross-examination. Even the opinions of the authors may change after their rules are written. *Mississippi Power & Light Co. v. Whitescarver*, 68 F. (2d) 928 (5th Cir. 1934). *Cf. Grant v. Libby, McNeill & Libby*, 160 Wash. 138, 295 Pac. 139 (1931); *Hanson v. Columbia & Puget Sound R. Co.*, 75 Wash. 342, 134 Pac. 1058 (1913).

■ Moreover, many of the rules in question here were brought out by the defendant during cross-examination of the plaintiff and of plaintiff's expert witness, Warren Wehmeyer. The defendant also presented many expert witnesses who testified about the standard of care. Testimony concerning the rules themselves would have been merely cumulative evidence, and would not have further assisted the trier of the facts. The admission of cumulative

evidence is discretionary with the trial court. *Girardi v. Union High School Dist. No. 1,* 200 Wash. 21, 93 P. (2d) 298 (1939).

The defendant further assigns error to the trial court's refusal to admit a copy of the rules themselves into evidence. The defendant argues that RCW 19.29.040 expressly provides that a violation of any rule made by the commission (or director) should be deemed a violation of the chapter. Plaintiff argues that the rules are unconstitutional because they are an invalid attempt to delegate legislative duties. We need not answer this argument because rule 1.4 provides that these rules do not affect the civil rights or liabilities of others. Rule 1.4 provides:

"Neither the promulgation of these rules, nor anything contained in these rules shall be construed as affecting the relative status or civil rights or liabilities between employers and their workmen and/or the workmen of others, and/or the public generally; nor shall the use herein of the words 'duty' and 'responsibility' or either, import or imply liability other than provided for in the Industrial Insurance and Safety Laws of the State of Washington, to any person for injuries due to negligence predicated upon failure to perform or discharge any such 'duty' or 'responsibility,' but failure on the part of the workmen, foremen, or employers to comply with any compulsory rule shall be cause for the Department of Labor and Industries to take action in accordance with the Industrial Insurance and Safety Laws."

The defendant contends that the above-quoted rule is invalid because RCW 19.29.040, which sets up the original delegation to the director to make such rules, has the following proviso:

". . . *Provided,* That no rule amending, altering or changing any rule supplementary to the rules herein contained shall provide a less measure of safety than that provided by the rule amended, altered or changed."

According to the defendant, rule 1.4 would be a lesser measure of safety and is therefore a violation of the proviso.

The director by promulgating rule 1.4 did not lessen the standard of safety of the legislative rules but merely limited

their effect in incurring civil liability. This rule limiting civil liability did not affect the legislative edict against lowering the standard of care. Rule 1.4 did not violate the proviso.

■ The defendant assigned error to the failure of the trial court to give the defendant's proposed instructions Nos. 16, 17, and 18. All three of these proposed instructions deal with contributory negligence. One provided, in essence, that if a reasonably prudent electrician would not have been in the manhole by himself the plaintiff was guilty of contributory negligence; another concerned his failure to use rubber gloves; and the third was based on his failure to use a rubber blanket or insulated platform.

In *Smith v. McDaniel,* 53 Wn. (2d) 604, 335 P. (2d) 582 (1959), we said:

"The test should be: May counsel, from the instructions given, satisfactorily argue his theory of negligence to the jury? . . ."

*Cf. DeKoning v. Williams,* 47 Wn. (2d) 139, 286 P. (2d) 694 (1955); Wiehl, Instructing a Jury in Washington, 36 Wash. L. Rev. 378 (1961).

Instruction No. 10 given by the trial court provided:

"You are instructed that the plaintiff, as an invitee of the defendant, did not have an absolute, unqualified right under all circumstances to assume that the premises were in a reasonably safe condition to work in. *He must look out for his own safety and in so doing, is required to use that degree of care which a reasonably prudent person in the same trade of ordinary intelligence would exercise under like or similar circumstances.*" (Italics ours.)

The defendant's counsel quoted to the jury the last sentence of instruction No. 10. He analyzed the evidence bearing on the plaintiff's failure to have another man in the manhole, and his failure to wear rubber gloves or use a rubber blanket or insulated platform. The theories of each of the parties were presented to the trier of the facts. The defendant was not denied the opportunity to argue satisfactorily its theory of negligence to the jury under the instructions given.

The defendant assigns error to the refusal of the trial court to give proposed instruction No. 13, which purported to advise the jury as to the law of contributory negligence and assumption of risk. Upon reading the jury instructions in their entirety, however, we find they properly advise the jury on these issues. It is within the trial court's discretion to determine how many instructions are necessary to present fairly each litigant's theory of the case. *Short v. Hoge,* 58 Wn. (2d) 50, 360 P. (2d) 565 (1961). We find no abuse of discretion by the trial court's failure to give the proposed instruction.

The defendant contends the court erred in failing to give its proposed instruction No. 15, which would have told the jury that the plaintiff was charged in law with the knowledge of his employer, Service Electric Co., Inc. The defendant argues that the duty of the owner or occupier is discharged if the contractor is given warning or has knowledge of the danger. In this case, however, the employer was not given warning nor did he have knowledge of the deterioration of the cable and the prior arcing incident. The court did not err in failing to give the proposed instruction.

The defendant argues that the court committed error by failing to give its proposed instruction No. 22 which would have told the jury that the defendant had a right to assume the plaintiff would use recognized safety appliances. The court did not err by failing to give this instruction. The application of safety appliances was an issue in the case. Such an instruction would constitute a comment on the evidence since it might lead the jury to believe that certain safety devices were required. The requested instruction was properly refused.

The defendant lastly contends that instruction No. 13 does not properly state the law concerning the liability of a possessor of land. We disagree. We find the instruction to be a proper application of the law as expressed in *Greenleaf v. Puget Sound Bridge & Dredging Co., supra.*

The judgment is affirmed.

DONWORTH, FINLEY, WEAVER, and HAMILTON, JJ., concur.