## MYERS v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY.

No. 2191.   Decided May 27, 1911 (116 Pac. 1119).

1. PRINCIPAL AND AGENT—UNAUTHORIZED DECLARATION BY AGENT— EFFECT ON PRINCIPAL. A declaration made by an agent not relating to any business then being transacted for the principal and not within the scope of agency, generally, does not bind the principal.   (Page 201.)

2. EVIDENCE—ADMISSION BY AGENT—AUTHORITY—SUFFICIENCY. Evidence *held* to show that a railroad division superintendent's act in giving an employee a service letter showing the cause of his discharge was within the superintendent's authority, making the letter admissible against the company in an action based on the discharged employee's negligence.   (Page 202.)

3. NEGLIGENCE — COMPARATIVE NEGLIGENCE — INAPPLICABILITY. The doctrine of comparative negligence does not prevail in Utah. (Page 203.)

4. TRIAL—INSTRUCTIONS—REQUESTS. Requested instructions covered by the charge as given are properly refused.   (Page 204.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Lena Myers against San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Pennel Cherrington* and *Dana T. Smith* for appellant.

*Booth, Lee & Badger* and *Powers & Marioneaux* for respondent.

STRAUP, J.

This case was here on a former appeal.   36 Utah 307, 104 Pac. 736.   There may be found à statement of facts with respect to the cause of the injury and death of plaintiff's

husband, and of the alleged negligence of the defendant and contributory negligence of the deceased.

The defendant was operating two sections of a freight train in the same direction. The two sections were regarded as two separate trains. The deceased was the conductor of the first section, which was the advance section. The second or rear section ran into the first causing a rear end collision and killing the deceased. The conductor of the rear section was discharged by the defendant's train master on the day of the collision, or the day thereafter. Nine days after that he was given what is called a service letter by the defendant's division superintendent. In that letter the superintendent stated, among other things, that the conductor of the rear or second section was, "Discharged while on train 2nd No. 81, February 5th, 1906; ran down train 1st No. 81, which was on time, causing rear end collision. Dismissed from service on account of his utter disregard of the time-tables, rules, and instructions." This letter was a regular printed form filled in, a form which was furnished the superintendent by the defendant for such purpose. On the former hearing the judgment in favor of the plaintiff was reversed because of the admission of this letter in evidence over the defendant's objection. On a retrial of the case the letter was again admitted in evidence. A judgment again was had against the defendant, from which it has prosecuted this appeal. Complaint is again made of the ruling admitting the letter in evidence.

The ruling now, as before, involves the question of admissions of an agent to bind the principal. On the former hearing we held the letter improperly admitted upon the ground that the authority of the superintendent to write the letter and to make the statements and declarations contained therein was not sufficiently shown. We then held that the admissibility of such an admission rests upon the principle of agency, and the authority of the agent in the particular instance to speak for the principal. On the first hearing it was not shown, nor was it claimed, that the superintendent had direct or actual authority to write such a letter or to

make such statements or declarations. The authority was claimed from the facts that the agent who wrote the letter was the division superintendent, and that, when an employee left the service of the defendant, it was customary to give him a service letter. There was then no proof to show whose duty it was to write or give such a letter, nor the scope of the authority of the person whose duty it was to write or give it. We held that from the fact that the letter was written and signed by the superintendent it could not be presumed that it was within the scope of his authority to write such a letter as was written by him, or to make such statements and declarations as were made by him; that in the absence of direct or special authority, to render the statements or declarations of an agent admissible as an admission binding upon the principal, it was essential to show that the declarations or statements were made within the scope of the agency and during the transaction of business by the agent for the principal, and were cotemporaneous with the acts which they illustrated; and, if the transactions or acts which they characterized or illustrated were themselves immaterial and inadmissible, the declarations and statements of the agent were likewise inadmissible.

It is now claimed by the respondent, and denied by the appellant, that on the retrial of the case, direct and express authority of the superintendent to write the letter, and to make such statements and declarations as are contained in the letter, was shown. The appellant further contends that though the superintendent had actual and properly delegated authority to issue service letters, still the fact of issuing such letters and of giving one to the discharged conductor being itself irrelevant to the issue and inadmissible, the declarations and statements made by the superintendent in connection therewith must likewise be held to be inadmissible. As before observed the question must be determined upon the ground of authority of the superintendent to speak for the defendant, so that his statements and declarations became the declarations and statements of the defendant. When an agent declares or states something, not in relation to any

business then being transacted for the principal, and not cotemporaneous therewith, and not within the scope of the agency, it is generally said such statements and declarations are *without authority,* and not binding upon the principal.

In such case the transaction, of which the declarations and statements are a part, being itself irrelevant and inadmissible, the declarations and statements of the agent are likewise inadmissible. That is to say, had the superintendent, not in relation to any business transacted for the defendant, and not within the scope of his agency, written to A. stating his views as to the cause of the collision and who was at fault in causing it, the fact or transaction of writing to A. being itself irrelevant and inadmissble, the declarations and statements of the superintendent in connection therewith would likewise be inadmissible. Stating it another way, the writing of the letter not being in relation to the business of the principal and not within the scope of the agency, there would be a *want of authority* to bind the principal by anything said or declared by the agent. Hence, we would say, the agent, in such case, was not authorized to speak for the principal, and that his speech was not the principal's speech. But suppose the agent was required or directed by his principal to write to A. stating to him the cause of the collision, and who was to blame for it, then the statements and declarations of the agent made in relation to such matter would be the statements and declarations of the principal. The former, upon the evidence, was the situation on the first trial; the latter, on this trial. It is conceded the evidence, with respect to the authority, duties, and powers of the superintendent on this trial, differs from the evidence on the first trial. The superintendent was a witness produced by the plaintiff, and was examined, both on direct and cross-examination, at great length, in respect of his duties, powers, and authority to write and give service letters, such as was here given by him to the discharged conductor. He testified, in substance, that the defendant, and its trainmen and other employees,

had entered into an agreement that a record should be kept
by the defendant; and that an entry should be made of any
violation of rules by an employee, good practice, neglect of
duty, or other fault, showing facts, together with conclusion
and action; and that it was a part of the agreement, when
an employee was discharged, to give him a service letter
specifying the cause of discharge. A book for such purpose
was kept under the supervision and direction of the super-
intendent. The rules of the defendant required that the rec
ord of each employee should be open for his inspection, and
for the inspection of the officers of the defendant. If it was
not practicable for the employee to go to the office, the rules
required that a transcript of his record should be furnished
and sent him on application. It was the duty of the super-
intendent, as such, to furnish and give such a transcript,
and to furnish a statement of the employee's record when he
was discharged or voluntarily left the service of the defend-
ant. It was also his duty to give a service letter to a dis-
charged employee, or one voluntarily leaving the service, in
which he was required to state the cause of the discharge
or other record of the employee. There was no one else who
·gave, or whose duty it was to give, such letters. The super-
intendent was required to issue and sign every service letter
issued on his division. He further testified that by reason
of the agreement requiring the defendant to give service let-
ters to discharged employees specifying the cause of the dis-
charge, the defendant designated or required the superintend-
ent to give them, and to state the cause of the discharge as
appearing on the books and records of the defendant. The
defendant had regular printed blanks of service letters on
which were printed the words "specify conduct and cause of
leaving service." This the superintendent in giving service
letters was required to fill out, stating the cause of discharge
or cause of leaving the service. A book, covering a period
of four years or more, and containing copies of a large num-
ber of service letters issued by the superintendent, in which
had been specified by him the cause of the discharge of

employees, or of their leaving the service, was kept by the defendant and was put in evidence.

This testimony is undisputed. We think the effect of it is that the superintendent was designated and appointed by the defendant to do just what was done by him, and to state just what was stated by him—the cause of the discharge of the conductor—and that the things done and said by him in that regard were within the scope of the agency, and were done in relation to business transacted by him for the defendant. Under the circumstances now disclosed we are therefore of the opinion that the declarations and admissions of the superintendent were, in law, the statements and declarations of the defendant, and that the letter was properly admitted in evidence. (*Chemical Co. v. Knight,* 106 Va. 674, 56 S. E. 725; *McNicholas v. New England Tel. & Tel. Co.,* 196 Mass. 138, 81 N. E. 889; *Lynchburg Tel. Co. v. Booker,* 103 Va. 594, 50 S. E. 148; *Moran Bros. Co. v. Snoqualmie Falls Power Co.,* 29 Wash. 292, 69 Pac. 759; *Kirkstall Brewery Co. v. Furness Ry. Co.,* 9 L. R., Q. B. Cases, 468.)

The defendant requested an instruction to the effect that the jury could not render a verdict against the defendant on the doctrine of comparative negligence. It complains because it was not given, and cites many cases and refers to many jurisdictions where the doctrine of comparative negligence has either been repudiated or never prevailed. The doctrine does not and never did prevail in this jurisdiction.

The entire charge of the court is hostile to and inconsistent with such a doctrine. The court charged the jury not on the theory of comparative negligence, but on the theory that contributory negligence was an absolute bar to a recovery. The test given by the court to the jury was, not whether such negligence was slight or great, as compared with the negligence of the defendant or another, but whether such negligence proximately contributed to the collision and injury, and whether, without it, the collision and injury would have occurred. The court, after defining neg-

ligence, contributory negligence, and ordinary care, as
is usual in cases of negligence, in plain and positive
terms charged the jury that if the deceased did not protect
his train as required by the rules of the defendant, or failed
to use ordinary care, and that "such failure proximately
contributed to the happening of the injury to him;" that if
his death was caused by his negligence, or by his negligence
concurring with the negligence of the defendant, or concur-
ring with the negligence of any member of either crew, or
concurring with the negligence of any other person; that,
though the defendant, or members of the on-coming crew,
or of the deceased's crew, were negligent, yet if the jury
found that the deceased was also negligent the plaintiff could
not recover. In at least six separate and distinct paragraphs
of the charge, upon divers hypotheses, the jurors were ad-
monished and directed that if the deceased was negligent,
and if such negligence proximately contributed to his injury
or death, the plaintiff could not recover. It is thus seen that
the theory of the charge was upon the same theory requested
by the defendant. To have given the request complained of
would have added nothing to the charge. Counsel say that
the appellant was entitled to the request for the reason that
the jury may have believed, if they found that the deceased
was guilty of only slight negligence, and the on-coming crew
of great or excessive negligence, that they could render a
verdict for the plaintiff. There are at least six separate and
distinct paragraphs of the charge which forbade the jury
from rendering a verdict under such circumstance. If six
paragraphs did not prevent the jury from doing what coun-
sel say they may have done, we do not see how another to the
same effect and import would have helped the situation.
The court correctly and sufficiently charged the jury with
respect to the law applicable to the defendant's negligence,
and contributory negligence of the deceased. No complaint
is made of the charge in that particular. After the court
had done that, there was no more necessity to inform the jury
that the doctrine of comparative negligence did not obtain
in this jurisdiction, than to inform them that the common

law, unless modified by statute, and not the civil law, obtained in this jurisdiction. We think no error was committed in refusing the request.

The defendant also requested the court to charge the jury that: "No man is held to a higher degree of skill or care than the fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man engaged in the profession under the same circumstances. The test of negligence, so far as concerns the employees of the second section of train 81 in this case, is the same, and it matters not that they might have operated their train in a safer or less dangerous way. You cannot say that it was negligently operated, unless you find from a preponderance of the evidence that it was not operated in the usual and customary way commonly adopted by railroad trainmen of average experience and prudence."

The court refused to charge as requested, but charged the jury as follows: "In this case the defendant is not held to any greater or higher degree of care than that customarily used by railroads generally in the operation of their trains. If, therefore, you find from the evidence that the second section of train eighty-one was being operated in the usual and ordinary way for running freight trains, under the conditions existing at the time of the accident, such methods would not be negligence, and your verdict should be for the defendant."

Complaint is made of this ruling. The contention is that the defendant was entitled to have the court charge as requested, and that the court did not do so. In the first place, there was no evidence rendering such a charge pertinent. As before observed, the defendant was operating two trains in the same direction. The rules of the defendant required that "trains in the same direction must keep at least five minutes apart, except in closing up at stations or at meeting and passing points;" that "a train must not arrive at a station in advance of its schedule time;" that "all except first-class trains will approach yard limits under full control, and be prepared to stop within the limits of vision, and that

the responsibility for accident at such points will rest with the approaching train." It was alleged, and evidence adduced to support the allegations, that the second section was operated in violation of these rules, and that it, at a speed of from twenty to thirty miles an hour, was run into the first section while it was on time and within the yard limits of a station. On the other hand, it was contended by the defendant that the rules were not violated by the members of the second section, and that the first section was behind time; that it had not yet reached the yard limits of a station; that it had been delayed and was stopped, or nearly stopped; that the deceased ought to have protected his train by throwing off fusees, or by flagging, or by giving other stop signals, as by the rules of the defendant provided; and that he was guilty of negligence because those things were not done. The case is not one involving skill, or of different methods of doing a thing, one safe and the other dangerous, or of different methods or degrees of safety or danger. The defendant did not contend, nor, we assume, can it be contended, that operating a freight train in violation of the rules of the defendant referred to, and running it in advance of its schedule time, not keeping at least five minutes apart of an advanced train on time moving in the same direction, and running it in yard limits not under control at a speed of from twenty to thirty miles an hour and encroaching upon the time of an advanced train itself on time in yard limits, and colliding with it, is a reasonably safe, or proper way, or a customary, or a usual, or ordinary manner, of operating a freight train. What defendant contended was not that the doing of such things, was reasonably safe, or proper, or usual, or customary, or ordinary, but that the members of the second crew did not do them; that the advance train was itself not on time, that it was not in the yard limits, that it was delayed and stopped, or practically so, and that the collision was due to the failure and negligence of the deceased in not protecting his train.

In the next place, while in some cases and under some circumstances it is proper to show the customary or usual man-

ner of doing a thing as generally done by those engaged in a similar business under similar circumstances, to aid the jury in determining the question of care or negligence involved in the particular case, yet it is not proper to charge the jury, as was requested, that the train operatives of the second crew could not be held guilty of negligence, if what was done by them, in the operation of their train, was usual, or customary, or was ordinarily or. generally done by train operatives. This is well illustrated by the case of *Cass v. Boston & Lowell R. R. Co.,* 14 Allen (Mass.) 448, where evidence of such character was held admissible, and in the case of *Maynard v. Buck,* 100 Mass. 40, where a charge such as was here requested was held improper. The reason for the distinction is well stated by the court in the last case. The court said:

"The effect and purpose of the evidence is to aid the jury in forming their judgment of what the party was bound to do, or was justified in doing, under all the circumstances of the case. What had been done by others previously, however uniform in mode it may have been shown to have been, does not make a rule of conduct by which the jury are to be limited and governed. It is not to control the judgment of the jury, if they see that in the case under consideration it is not such conduct as a prudent man would adopt in his own affairs, or not such as a due regard to the obligations of those employed in the affairs of others would require them to adopt. It is evidence of what is proper and reasonable to be done, from which, together with all the other facts and circumstances of the case, the jury are to determine whether the conduct in question in the case before them was proper and justifiable."

The same principle is also illustrated in the cases of *Wabash Railroad Co. v. McDaniels,* 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605; *Grand Trunk R. R. Co. v. Richardson,* 91 U. S. 454, 23 L. Ed. 356, and in the case of *Spiking v. Railway & Power Co.,* 33 Utah 313, 93 Pac. 838, where the present Chief Justice well said: "There are some things that it may be negligent to do or omit to do, although all others do or omit to do them. This is well illustrated in the case of *Webster v. Symes,* 109 Mich. 1 [66 N. W. 580];" and other cases there cited. Were it not so, a driver of an

automobile could not be found guilty of negligence in operating an automobile along a highway or street at a speed of twenty miles an hour, because it was usual or customary for others to operate automobiles at such speed.

We think, under the circumstances, no error was committed in refusing to charge as requested. We are of the opinion that the judgment of the court below ought to be, and it therefore is, affirmed, with costs.

FRICK, C. J., and McCARTY, J., concur.