WHITE v. UTAH CONDENSED MILK CO.

No. 2965.     Decided August 25, 1917.     (167 Pac. 656.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—PROMISE TO REMEDY DEFECTS. Where the facts and circumstances are such that by reason of some defect in machinery or appliances the servant, by reason of his knowledge, experience, and appreciation of the danger, would be held to have assumed the risk in case of an accident, yet, if the master promises to remedy or repair such defect so as to make the machinery or appliances reasonably safe, and the servant, in reliance of such promise, remains in the employ of the master and continues to discharge his duties as before, the master assumes the risk of injury for at least a reasonable time, unless the danger is so obvious that no man of ordinary prudence would continue to discharge the duties of the servant in view of the danger.[1]   (Page 283.)

2. MASTER AND SERVANT—QUESTIONS FOR JURY—ASSUMPTION OF RISK—PROMISE TO REMEDY. Where the servant testified that the master promised to provide a guard for a steam gauge; that he relied thereon—whether there was such a promise and whether the servant relied thereon was for the jury.   (Page 285.)

3. MASTER AND SERVANT—QUESTIONS FOR JURY—ASSUMPTION OF RISK—OBVIOUS RISKS. Ordinarily it is for the jury whether the danger is so imminent and obvious that a man of ordinary prudence would not have continued in the employ notwithstanding the promise.   (Page 285.)

4. MASTER AND SERVANT—QUESTIONS FOR JURY—ASSUMPTION OF RISK—OBVIOUS RISKS. Evidence held not to warrant saying as a

[1] *Johnson* v. *Mining Co.,* 41 Utah, 142, 125 Pac. 407.

matter of law that the injured servant assumed the risk notwithstanding the master's promise to remedy the danger.  (Page 285.)

5. MASTER AND SERVANT—INSTRUCTIONS—ASSUMPTION OF RISK—OBVIOUS RISKS.  Where the court submitted the issue whether the master promised to remedy the danger and the servant relied thereon, and instructed that unless the danger was imminent the servant could not recover, and the jury found for plaintiff, it was error to refuse the requested instruction, precluding recovery if the danger was so obvious that a person of ordinary prudence would not have incurred it, notwithstanding which the servant continued work.  (Page 286.)

6. EVIDENCE—EXTENT OF INJURIES.  The injured servant could not testify that when he applied for work after the injury, defendant's manager said that they would not feel safe with him at work, owing to his defective sight caused by the injury; the real purpose being to show the extent of injury as viewed by defendant, and not the fact that the servant was refused employment, which he could show.[1]  (Page 287.)

7. EVIDENCE—ADMISSION OF SERVANT—ADMISSIBILITY.  The admissions of the employer's general manager, outside the scope of his employment, as to extent of a servant's injuries, are not admissible against the employer.  (Page 288.)

Appeal from District Court, First District; *Hon. J. D. Call*, Judge.

Action by Walter White against the Utah Condensed Milk Company.

Judgment for plaintiff.  Defendant appeals.

REVERSED AND REMANDED with directions.

*King & Nibley* and *P. T. Farnsworth* for appellant.

*Geo. Q. Rich* and *A. A. Law* for respondent.

FRICK, C. J.

This is an action to recover damages for personal injuries. The plaintiff, in his complaint, in substance, alleged that at, and for some time before, the accident resulting in his in-

---

[1]*Meyers* v. *S. P., L. A. & S. L. R. Co.*, 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229; Id., 39 Utah, 198, 116 Pac. 1119; *Idaho F. Co.* v. *Firemen's Fund Ins. Co.*, 8 Utah, 41, 29 Pac. 826, 17 L. R. A. 586.

juries he was in the employ of the defendant, a corporation, in its steam milk condensing plant as stationary engineer having charge of the defendant's steam boilers, steam separator, engine, etc.; that in operating said steam separator and boilers it was necessary to have a glass gauge, which was subjected to great pressure by the steam generated in said boilers, and that in performing the duties imposed on him plaintiff, at frequent intervals, was required to go near said glass gauge; that the glass tube composing said gauge, by reason of the aforesaid pressure, would frequently burst, and, in case it did so, the steam pressure to which it was subjected would cause said glass tube to break into numerous pieces or fragments which would be thrown in all directions throughout the boiler room where plaintiff was required to be; that said glass gauge, on the 8th day of February, 1915, by reason of the pressure aforesaid, exploded with great violence, and by reason of the fact that the defendant had negligently omitted to place any shield or guard over the glass tube the pieces or fragments of glass were scattered and thrown to where the plaintiff at the time was required to be, and some of the pieces or fragments of glass were thrown at and forced into plaintiff's eye, thereby causing his eyesight in one of his eyes to be permanently injured and affected; that some time before the bursting of said glass gauge as aforesaid the plaintiff demanded that the defendant procure some shield or guard and place the same over said glass gauge so as to protect the plaintiff from being injured by the flying particles or fragments of glass in the event said gauge should burst or explode as aforesaid; that defendant then and there "promised and agreed with plaintiff that if plaintiff would remain at work in said engine room as defendant's said engineer, the defendant would repair said defect in said machinery by installing, as soon as the same could be procured on the market, an eye guard for the said glass gauge as requested by the plaintiff"; that the plaintiff relied on said promise, and continued to discharge the duties as aforesaid; that the defendant disregarded the promise made as aforesaid, and, as a consequence, plaintiff was injured as before stated. The plaintiff also

alleged that there were guards or shields on the market which were inexpensive, and which could have been procured by the defendant and attached to said glass gauge so that in case the same was caused to burst or explode as aforesaid said guard or shield would have prevented the pieces or fragments of glass from being thrown out into the room or to where the person operating said boilers, etc., was necessarily required to be. The defendant filed its answer to the complaint, and, after denying the alleged negligence on its part and the alleged promise set forth in the complaint, it also affirmatively averred that if plaintiff was injured as aforesaid, the injury was the result of his own negligence and want of care; that he was thoroughly acquainted with, and fully appreciated, the danger to which he was exposed in the performance of his duties as engineer, and that he had assumed the risk of injury. Defendant also pleaded a further defense, which, however, is of no consequence. The case was submitted to a jury, which returned a verdict for plaintiff, and the defendant appeals.

Counsel for defendant have assigned and argued numerous errors relating to the instructions given by the court and to the refusal of the court to charge as requested, and to the admission of certain evidence. We shall consider such assignments as we deem material in their order.

The court, at the request of the plaintiff, in substance, charged the jury that if they found from a preponderance of the evidence that the glass gauge was situate as alleged in the complaint, "that there was imminent danger of the same bursting and inflicting injury upon the plaintiff while at work"; that at that time there was an appliance in common use and for sale on the market which, if installed, would have "prevented any injury resulting from the breaking of such glass guage"; that plaintiff had directed defendant's attention to the "danger resulting from the breaking of said glass gauge," and that said danger could have "been prevented by the purchasing and installing of said appliance"; that the defendant promised that it would remedy such defect by supplying said "eye guard," and that plaintiff, relying on said promise, continued to operate defendant's machinery as he

had theretofore done; that the defendant failed and neglected
to remedy said defect by purchasing and installing the afore-
said appliance preventing the danger from the bursting of
said glass gauge, and that said glass gauge bursted or ex-
ploded, and by reason of its failure to comply with the matters
before stated the plaintiff was injured by fragments of said
glass gauge penetrating his eye, "then and in such event you
are instructed that your verdict in this case must be for the
plaintiff and against the defendant." The defendant ex-
cepted to the foregoing charge. The foregoing statement was
followed in the same paragraph by the further statement that
in case the jury found "that the accident did not occur within
a reasonable time" after the alleged promise of the defendant,
they could find for the plaintiff; and the court further
charged:

"But unless you find by a preponderance of the evidence
in this case that it is the general custom among persons owning
and operating steam plants of the character of that in which
plaintiff met with his accident to install and maintain eye
guards about the glass gauges on steam separators therein,
your verdict must be in favor of defendant and against
plaintiff."

To the portion of the charge last referred to the defendant
did not except. Defendant's counsel now insist that that por-
tion of the foregoing charge which is excepted to states all of
the elements which, in the judgment of the court, were neces-
sary to authorize the jury to return a verdict in favor of the
plaintiff, but that not all of the elements necessary to a re-
covery are included in the court's statement, and for that
reason the charge is erroneous. As pointed out, the court
added at least two other propositions to that part of the in-
struction to which defendant's counsel excepted and which
they now insist did not contain all of the elements necessary
to a recovery. The particular complaint which counsel make
to that part of the instruction excepted to is that it entirely
excluded from the jury the defenses of assumed risk and con-
tributory negligence. It will be observed that the court did
not include in that part of the charge excepted to, nor in the

portion not excepted to, the element of assumed risk except by referring to the alleged promise of the defendant. The duty that is ordinarily imposed upon the servant in case the master has promised to remedy some defect in machinery or appliances, or the place of work, is entirely omitted.

Counsel for defendant insist that, under the undisputed evidence in this case, the plaintiff, as a matter of law, assumed the risk of injury incident to the bursting of the glass gauge aforesaid; that he could recover only in case that the jury found that, although the alleged promise was made, and that by reason of that promise he continued in the defendant's employ, yet, if the jury should further find that the danger was so imminent and ''obvious that a reasonably prudent man would have declined to work at and near said glass gauge notwithstanding such promise,'' the plaintiff could not recover in this action. The foregoing elements were embodied in the request to charge offered by the defendant, but the court refused to charge as requested.

Counsel contend that the court erred in refusing to so charge and in entirely omitting from its charge the elements or propositions contained in its request. The law is well settled that where the facts and circumstances are such that by reason of some defect in machinery or appliances the servant, by reason of his knowledge, experience, and appreciation of the danger, would be held to have assumed the risk in case of an accident, yet, if the master promises to remedy or repair such defect so as to make the machinery or appliances reasonably safe, and the servant, in reliance of such promise, remains in the employ of the master and continues to discharge his duties as before, the master assumes the risk of injury for at least a reasonable time, unless the danger is so obvious that no man of ordinary prudence would continue to discharge the duties of the servant in view of the danger. The rule is stated in various terms by the different writers and courts, but the substance of all the different statements is practically the same. In *Johnson* v. *Mining Co.*, 41 Utah, 142, 125 Pac. 407, Mr. Justice McCarty, speaking for this court, states the rule thus:

"The rule as declared by practically all of the authorities is that, when the master in response to a complaint made by a servant of the unsafe and dangerous condition of the place in which the servant is at work promises to eliminate the particular danger complained of by putting the premises in a reasonably safe condition, and the servant, relying on the promise, continues at work for a reasonable time thereafter, the master, and not the servant, assumes the risks of the danger complained of during such reasonable time, unless the place is so obviously dangerous that a reasonably prudent man would decline to work there, notwithstanding the promise of the master."

In 1 Sherman & Redfield, Law of Neg. (6th Ed.), in concluding section 215, where the rule is discussed, it is said:

"There is no longer any doubt that where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonably allowed for its performance, or, indeed, within any period which would not preclude all reasonable expectation that the promise might be kept."

In 26 Cyc. 1209, the rule is stated in the following words:

"Where the master or some one acting in his place promises to remedy the defect complained of, the servant by continuing in his employment for a reasonable time after such promise does not assume the risk of injury from the defect unless the danger was so patent that no person of ordinary prudence would have continued to work."

In 2 Cooley on Torts (3d Ed.) p. 1159, the author, after substantially stating the rule as in the foregoing quotations, concludes as follows:

"If the danger is obvious and such that a reasonably prudent man would not incur it, the rule does not apply, and the servant continues at his own risk."

The United States Supreme Court, in the recent case of *Seaboard, etc., Ry.* v. *Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, reaffirmed in 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458, in the headnote to the opinion in 233 U. S., states the rule in the following language:

"Where there is promise of reparation by the employer, the continuing on duty by the employee does not amount to assumption of risk unless the danger be so imminent that no ordinarily prudent man would rely on such promise."

It is unnecessary to pursue the authorities farther.

The question, therefore, is, does the doctrine stated in the foregoing cases apply to the case at bar?

The plaintiff testified that a promise was made by the general manager of the defendant that a guard or shield would be obtained to obviate the danger of injury from the bursting of the glass gauge, and that he requested the plaintiff to remain at his post in the engine room as before. **2, 3, 4** The plaintiff also testified that in reliance on the promise he remained in the employ of the defendant as before, and that the explosion occurred in about ten days or two weeks, or, perhaps, a little longer, after the promise was made. In the case cited from 239 U. S. there was a promise, as in the case at bar, and the question was whether the danger arising from the bursting of a glass gauge similar to the one in question here was "so imminent that no ordinarily prudent man would rely on the promise," and it was there held that the court could not say, as a matter of law, that the danger was such. Counsel for the defendant in this case insist that in this case the danger was so obvious and imminent that an ordinarily prudent person was not justified in relying on the promise to repair or remedy the defect, and hence plaintiff assumed the risk as a matter of law, notwithstanding the promise. In view of the evidence in this case there is much force to counsel's contention. The evidence is undisputed that the plaintiff was the only person who knew that there was such a thing as a shield or guard, and he alone seemed to be informed where such a shield was procurable. According to his testimony, when he spoke about it, the general manager did not seem to understand what was meant by a shield or guard. Moreover, the plaintiff had full charge of the boilers, the steam separator, and engine, and he himself was the only one who seemed to know and appreciate the real danger arising from the bursting of the steam gauge. If a servant ever assumes the risk of danger, it would seem that in the absence of a promise the plaintiff would have done so in view of the undisputed facts and circumstances of this case. The promise to remedy the defect must, however, also be kept in mind. While it is true that the general manager denied that he made

any promise, and the circumstances seem to be in his favor, yet, in view that the plaintiff testified to the promise, and that he relied thereon, it was for the jury to say whether the promise was made and whether the plaintiff, in relying thereon, remained in charge of the boilers, etc.  Ordinarily it is a question of fact for the jury, as pointed out by the Supreme Court of the United States, in the case last cited, whether the danger is so imminent and obvious that no man of ordinary prudence would have continued in the employ notwithstanding the promise.  We are not prepared to say that the evidence is of that character in this case to authorize us to say as a matter of law that the plaintiff assumed the risk notwithstanding the promise.

As we have pointed out, however, the court, at plaintiff's request, charged the jury that, unless they found that the danger was imminent, they could not find for him.  The jury in returning a verdict in his favor, therefore, must have found that the danger was imminent, and they could hardly have avoided arriving at the conclusion that it was also obvious and continuing.  The jury, therefore, apparently at least, found the very fact to exist which ordinarily gives the master a right to insist on and to enforce the defense of assumption of risk notwithstanding the promise to remedy or to repair the defect.  True, the court did not state the proposition in the usual form, namely, that the plaintiff could not recover if the danger was so imminent and obvious that a man of ordinary prudence would have declined to continue to discharge plaintiff's duties in face of the danger, yet the defendant supplied that omission in its request which the court refused.  In view, therefore, that the jury found that the danger was imminent—and there is no finding that it was not such—that an ordinarily prudent and careful man would not have declined to continue to discharge plaintiff's duties, the case, although the evidence was sufficient to warrant it, was not submitted to the jury upon all the elements of law that are involved in this case in view of the evidence.  The court, therefore, erred in refusing the defendant's request and in not charging, in substance at least, as requested.

In view of all the facts and circumstances the question of assumption of risk was therefore not properly submitted to the jury. The mere fact that the court defined assumption of risk in one of its instructions was, under the circumstances of this case, wholly insufficient to enlighten the jury upon that question.

Complaint is also made that the court erred in refusing others of defendant's requests. While the court might well have given one or two of defendant's other requests, yet no prejudicial error resulted from refusing them, since the case otherwise was sufficiently covered by the court's general charge.

Error is also predicated upon the ruling of the district court in permitting the plaintiff to answer a certain question propounded to him on direct examination. The plaintiff testified that by reason of the injury to his eye he was unable to obtain employment as a stationary engineer; that he applied to the general manager of the defendant for work some time after the injury, but was refused employment. Plaintiff's counsel then propounded the following question:

"What was said with reference to your ability to do the work, and in particular with reference to your eyesight?"

The witness answered:

"Mr. Merrill said they did not feel safe with me in the boiler room with my vision in that condition; the company had talked the matter over and concluded that."

Defendant's counsel objected to the question upon the grounds that it was hearsay and incompetent, etc. The court overruled the objection, and permitted the witness to answer as before stated, and defendant's counsel have assigned the ruling as error. In support of their contention counsel cite *Meyers* v. *S. P., L. A. & S. L. R. Co.*, 36 Utah, 307, 104 Pac. 736, 21 Ann. Cas. 1229; also in 39 Utah, 198, 116 Pac. 1119; *Idaho F. Co.* v. *Firemen's Fund Ins. Co.*, 8 Utah, 41, 29 Pac. 826, 17 L. R. A. 586; 2 Jones, Com. Ev. (Blue Book), sections 357, 358. In defense of the ruling plaintiff's counsel cite *Webb* v. *Smith*, 6 Colo. 366; 2 Wharton's Ev., section 1177.

While it no doubt was proper for the plaintiff to show that he was unable to obtain employment, yet it is very clear from the record that that was not the purpose for which the question was propounded to the witness.

The purpose of the question was to prove the seriousness of the injury to the eye, and that the general manager of the defendant considered it so months after the accident. If plaintiff's counsel merely sought to prove that plaintiff was refused employment, the declarations of the general manager were wholly unnecessary. The general manager was neither qualified nor authorized to make admissions respecting the seriousness of plaintiff's injury at the time and under the circumstances shown in the record. His declarations outside of the scope of his employment were not admissible against his principal, the defendant. The principle which controls under such circumstances is fully discussed in *Meyers* v. *S. P., L. A. & S. L. R. Co.,* supra, and in the section from Jones, Ev., supra. Moreover, a mere cursory reading of the authorities cited by plaintiff's counsel discloses that they are not in point here. We desire to add in this connection, however, that if this were the only error we, in view that there was no dispute regarding the accident and character of plaintiff's injury, should not feel inclined to reverse the judgment upon that ground alone. In view, however, that the case must be remanded for a new trial on other grounds, we deem it fair to give the trial court the benefit of our views upon that assignment.

There is no merit in the contention that the evidence was insufficient to carry the case to the jury. That question is conclusively settled by the Supreme Court of the United States in the case to which we have referred, where the facts and circumstances were in effect like those in the case at bar.

The judgment is reversed, and the cause is remanded to the district court of Cache County, with directions to grant a new trial. The defendant to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.