### DETERMINED IN THE

# SUPREME COURT

#### OF

# WASHINGTON

[No. 15763. Department Two. October 13, 1920.]

## V. B. BENNINGTON, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS (56) — OF LIVE STOCK — NEGLIGENCE — EVIDENCE — SUFFICIENCY. In an action for injury to mules while in transit, a finding of negligent handling of a stock train is sufficiently sustained by testimony of witnesses who had had some experience with stock trains that the train was roughly handled, making sudden stops and starts, that complaints were made to the trainmen, who admitted that it was a little rough, and that part of the mules were injured or killed on the trip.

EVIDENCE (68, 69)—BEST AND SECONDARY EVIDENCE—FACTS EVIDENCED BY WRITINGS—DECLARATION OF AGENT—HEARSAY. Upon an issue as to the condition of mules shipped, the company cannot show the written statement of its veterinarian as to the condition in which he found them on inspection, since it is not the best evidence, and declarations of an agent as to past transactions of his principal are inadmissible as hearsay.

SAME (191, 210)—OPINION EVIDENCE—COMPETENCY OF EXPERTS— SPEED OF RAILROAD TRAIN. Upon an issue as to the negligent handling of a stock train, witnesses testifying as to the comparative speed of the train between certain points are not incompetent because it was their first experience with stock trains, where the place in question was not a place for the indulgence of excessive or increased speed.

CARRIERS (54, 57)—OF LIVESTOCK—CONNECTING OR ORIGINAL CARRIER—TRIAL—INSTRUCTIONS. In an action for injuries to stock shipped over two lines, an instruction as to the presumption that damaged

[1]Reported in 192 Pac. 1073.

stock delivered to the consignee was injured while in the possession of the last carrier, is not pertinent to the issue, where the last carrier took them after inspection as an original and not as a connecting carrier.

APPEAL (463)—REVIEW—HARMLESS ERROR—INSTRUCTIONS. An instruction to the effect that the injured stock was presumed to be in good condition when accepted for shipment, is not prejudicial where the evidence showed that it was in good condition.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered June 21, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to live stock injured through the negligence of a carrier. Affirmed.

*Cannon & Ferris* and *F. J. McKevitt,* for appellant.

*G. E. Lovell,* for respondent.

FULLERTON, J.—On December 4, 1917, the respondent, Bennington, purchased at Kansas City, Missouri, some forty-three head of mules, causing them to be shipped by the Chicago, Burlington & Quincy Railroad Company to Billings, Montana. While the mules were consigned to the respondent at Lind, Washington, the carrier named undertook to transport them no farther than Billings. At Billings they were delivered to the appellant, Northern Pacific Railway Company, which company issued to the shipper a new bill of lading therefor, agreeing to transport them to their destination at Lind. A number of the mules were injured while on the way, and this action was brought by the respondent to recover in damages for the losses suffered by him because of the injuries received by the mules while they were in the course of transportation by the appellant. A verdict was returned in favor of the respondent, and from the judgment entered thereon, this appeal is prosecuted.

The appellant first contends that the evidence is insufficient to justify the verdict. There is no claim that the mules were not in fact injured to the extent of the jury's verdict, but the contention is that there was no evidence that these injuries were the result of causes for which the appellant would be liable; in other words, there was no evidence of negligent operation of the train. The principal injury to the mules occurred while the train was in transit from Helena to Missoula, in the state of Montana. Between these points the train consisted of fifty-four cars, twenty-eight of which were loaded and twenty-six empty. The testimony on the part of the respondent as to the manner in which the train was operated was that of the respondent himself and his employee, both of whom accompanied the train. In substance, their testimony was that the train was roughly handled; that it was irregular in its movement, making sudden stops and starts, and that the train men themselves seem to think that its movements were "a little rough," and that various complaints were made about it. When the train reached Missoula, several of the mules were down, one was found with a broken leg, others were so badly injured that they were sent forward in a special car, and others again were in bad condition. The respondent testified further that it was hard to ascertain their exact condition at Missoula, but on reaching Lind it was found that the injuries to several of them were serious. One died from its injuries two days later, four were so badly injured as to render them worthless, and the injuries received by a number of others were such as to materially affect their sale value. The witnesses did not testify to any very extended knowledge on their part as to the usual and ordinary method of operating stock trains, but we think there was here, nevertheless, sufficient evi-

dence of negligent operation of this train to take the question to the jury. They were not entirely without experience on the matter and were competent to testify. Aside from this and the testimony as to the complaints of the train crew, we have the evidence of the effects of the journey on the animals themselves. These were unusual, and as we said in *Carstens Packing Co. v. Southern Pac. Co.*, 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N. S.) 975, "if the nature and extent of the damages proven is such that the jury may reasonably infer therefrom that it was caused by the rough handling of the carrier's train, it seems to us that such proof would be sufficient to sustain a finding that the damage was caused by the carrier's negligence."

The remaining assignments suggest errors which, if well founded, warrant a new trial. When the train reached Missoula, the respondent employed a veterinary surgeon to examine the mules and give them such treatment as he deemed they required. The veterinarian gave the respondent a written statement of the condition in which he found the mules. The appellant sought to introduce this statement as evidence on its own behalf, and assigns error on the ruling of the court rejecting it. An engaging argument is made in support of its admissibility; but, without further reference to it, we think it unfounded. The report was not the best evidence of the fact sought to be shown, and no reason appeared why the veterinarian could not be produced to testify in person. As secondary evidence it was therefore inadmissible. It also related to a past transaction, that is, a transaction completed as between the veterinarian and his principal, and, "Evidence of declarations of an agent as to past transactions of his principal are inadmissible, as mere hearsay." *Goetz v. Bank of Kansas City*, 119 U. S. 551.

The respondent was permitted, over the objections of the appellant, to compare the speed of the train between Helena and Missoula and its speed between other places on its route, and to testify that the jerks of the train, caused by its sudden stopping and starting, were more pronounced between these points than at other places. This is urged as error, for two reasons; first, because of the limited experience shown to be possessed by him as to the usual and ordinary operation of freight trains, and because it was shown that the grades were heavier between these places than at the other places with which the speed was compared. But we think the witness competent and the evidence admissible under the issues. Had this been the witness' first experience, clearly he could have testified to these facts, as it was a matter not necessary to have a prior experience to know. It was admissible because it tended to show negligent operation. If the gradients of the railway tracks were greater between these points than elsewhere, seemingly it was the place to exercise caution, not a place for the indulgence of excessive, or even increased, speed.

The court gave to the jury, among others, the following instruction:

"If a shipment is delivered to a carrier in good condition to be carried to its destination over the line of that carrier and of connecting carriers, and the shipment is delivered to the consignee by the last carrier in a damaged condition, unless there is proof to the contrary, the presumption arises that the damage, if any, occurred while the property was in the possession of the last carrier."

That the principle of law stated in the instruction is correct in the abstract, we held in *Sheble v. Oregon R. & Nav. Co.*, 51 Wash. 359, 98 Pac. 745, whether it was pertinent to any issue involved in the case is a

more serious question. Our opinion is that it was not. The stock, it is true, was brought to the place where the appellant was by another carrier, but the appellant did not receive them as a connecting carrier. It was shown that it there inspected them to ascertain their condition, and that it issued its bill of lading only for those it found in condition to be further transported. It was therefore an original, rather than a connecting, carrier. But instructions on abstract principles of law are not erroneous unless prejudicial. *Kelly v. Navy Yard Route*, 77 Wash. 148, 137 Pac. 444; *Foster v. Seattle Elec. Co.*, 35 Wash. 177, 76 Pac. 995. Here we are unable to find that the appellant could have been in any manner prejudiced by the instruction. There was no issue, either in the pleadings or in the evidence, as to the condition of the animals when the appellant received them for carriage. What evidence there was on the question showed them to be in good condition. Hence for the court to tell the jury that the presumption was that they were in good condition—and this is the effect of the instruction—could not be prejudicial error.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, TOLMAN, and BRIDGES, JJ., concur.