[No. 27474.   Department Two.   August 4, 1939.]

PHILIP GIRARDI *et al., Respondents,* v. UNION HIGH
SCHOOL DISTRICT No. 1, SKAGIT COUNTY, *et al.,*

*Appellants.*[1]

[1]Reported in 93 P. (2d) 298.

*Warren J. Gilbert* and *Karr & Gregory,* for appellants.

*Henderson & McBee,* for respondents.

SIMPSON, J.—Plaintiffs brought this action to recover compensation for injuries to themselves, and, in addition, plaintiffs Girardi sought recovery for damage to their automobile, sustained in the collision with a school bus owned by defendant school district and driven by defendant Ralph McMains, its employee.

Plaintiffs allege that the driver of defendants' bus was negligent in that he drove the bus on the left side of the center of the street or highway on which it was traveling; that the driver failed to keep his vehicle under control and to watch, look, and observe where he was going; that he did not yield to plaintiffs' driver the right of way; that, in making a left turn at the street intersection where the accident occurred, he failed to pass around the center of the intersection, but instead made a left turn before reaching the center of the intersection, cut the corner, and ran into and against plaintiffs' car as it was passing through the intersection on its right side of the highway.

Defendants by answer denied the charges of negligence, and alleged that the driver of plaintiffs' car was guilty of contributory negligence in that he was driving at an excessive rate of speed and failed to keep a proper lookout for other vehicles on the highway, to keep his car under control, and to exercise due care to avoid the collision. The reply put in issue the allegations contained in defendants' answer.

Upon the issues thus presented, the case was tried to a jury, resulting in verdicts favorable to plaintiffs. After appropriate motions for judgment notwithstanding the verdict and for a new trial were made and denied, defendants appealed.

Appellants urge errors on the part of the trial court (a) in excluding evidence concerning the speed of respondents' car; (b) in precluding the cross-examination of respondent driver relative to whether he had been drinking intoxicating liquor before the collision; (c) in the giving of certain instructions and the refusal to give other instructions proposed by appellants; (d) in the denial of a motion for a new trial; and (e) in entering judgment on the verdicts.

The accident occurred September 10, 1937, on west Division street, at or near its intersection with Wall street, just west of the city limits of Mt. Vernon. West Division street, running east and west, is paved with concrete eighteen feet in width, with additional black top paving on each side about four or five feet in width. Wall street runs north and south and is paved to a width of eighteen feet. A yellow strip is painted along the center of west Division street.

From the intersection, an unobstructed view is had of west Division street to a distance of about twelve hundred feet to the west. The accident took place at approximately nine o'clock a. m.; the day was clear, and the pavement dry.

The driver of the school bus was traveling in a westerly direction, and intended to make a left turn and go south on Wall street. Respondents were traveling in an easterly direction on west Division street.

Further evidence which the jury was justified in believing may be briefly stated as follows: As respondents arrived at a point one hundred fifty feet from the intersection, they were traveling about twenty-five miles per hour, at which time the driver took his foot from the gas pedal and did not thereafter accelerate his speed. He looked ahead, saw appellants' bus approaching from the opposite direction on its right side of the highway; that no signal of an intention to turn was given by anyone in the bus, and, feeling secure in having the right of way, proceeded to and across the intersection; that, when respondents were across the intersection, the driver of the bus turned immediately to his left in front of respondents' car, and came into collision with the left front portion of the car. Respondents were seriously injured by the collision. The injuries to Mr. and Mrs. Girardi were permanent in nature.

The map of the intersection introduced in evidence, and upon which the position of the cars after the collision was indicated, shows they came together at a point eighteen or twenty feet east of the east line of the pavement on Wall street. The front wheels of the bus were on respondents' side of the paved portion of the highway, and the left front end was within a short distance of the south side of the pavement on west Division street. In short, the bus in an oblique position occupied all but about two feet of the pavement on respondents' side of the road. The relative position of the cars just after the accident is not in serious dispute.

The evidence relating to speed and the giving of a signal indicating that the bus was going to turn to the left, was in conflict, but such evidence was entirely for

the determination of the jury, and it was justified in finding that appellants' driver was guilty of negligence.

■■ Appellants first complain of the court's refusal to allow a seventeen-year-old witness, who was riding in the bus, to testify concerning the speed of respondents' car as it approached the intersection. Upon direct examination, the witness testified that he rode in cars frequently and had watched speedometers, estimated the speed of the automobiles, and could tell the jury how fast respondents' car was traveling. Appellants offered to show that the witness would testify that respondents' car was traveling sixty miles per hour. When he was asked questions touching his qualifications, he stated that he had never made any tests of the speed of any cars coming toward him other than a mere guess. Objection to this testimony was sustained, though the court did allow the witness to testify that the car was coming very fast.

Our attention is called to *Tecklenburg v. Everett R., Light & Water Co.,* 59 Wash. 384, 109 Pac. 1036, 34 L. R. A. (N. S.) 784; *Hiscock v. Phinney,* 81 Wash. 117, 142 Pac. 461, Ann. Cas. 1916E, 1044; *Bennington v. Northern Pac. R. Co.,* 113 Wash. 1, 192 Pac. 1073, and other authorities which hold that a nonexpert witness may testify as to the speed of moving objects. The evidence was admissible. However, in view of the fact that the witness was allowed to express his opinion that the car was "coming fast," we are of the opinion that the exclusion of his testimony in regard to the precise rate of speed of respondents' car does not constitute prejudicial error and comes within the holding of this court in *Ives v. Silvernail,* 157 Wash. 25, 288 Pac. 276, in which it is stated:

"While the witness might properly have been permitted to testify, even though what he said would not have been of very great probative value, it was not

reversible error to reject the testimony. The testimony which he had already given amounted to substantially the same as if he had expressed an opinion that the automobile was going between fifty and sixty miles per hour, which was the offer of proof."

■ The evidence was cumulative, inasmuch as two other witnesses testified the car was proceeding at an excessive rate of speed and at approximately sixty miles per hour. In such cases, it is largely within the discretion of the trial court whether the evidence should be admitted. *In re West Marginal Way,* 109 Wash. 116, 186 Pac. 644; *Sound Timber Co. v. Danaher Lumber Co.,* 112 Wash. 314, 192 Pac. 941.

■ The next error assigned relates to the restriction of the cross-examination of respondent Philip Girardi. A partially filled bottle of whiskey was found in respondents' car, and appellants' counsel asked the witness, "You had a bottle in the car, didn't you?" The court sustained an objection to the question, and stated "Objection sustained. There is no allegation of that."

Appellant contends that the cross - examination should have been allowed in order to show that the witness had consumed intoxicating liquor. It will be observed, however, that appellants' attorney did not inquire as to whether respondent had consumed any of the liquor that had been in the bottle, and when asked by the court if he contended respondents were intoxicated or had drunk from the bottle, counsel answered in the negative. Counsel had a right to question the witness relative to drinking or being intoxicated, but he did not pursue that line of examination.

The record discloses that, after this question was raised, respondents testified very fully with respect to the bottle of liquor, the reason for having it in the car, and that neither of them had taken a drink. After

that testimony had been introduced, no questions were asked on cross-examination concerning the drinking or the matter of intoxication. The question concerning the bottle was immaterial, and the court's ruling was correct.

Appellants assign as error the giving of instruction No. 13 for the reason that the court did not define the terms "remote cause" and "mere condition." Although a definition of these terms would have been helpful, in view of the fact that the court expressly defined "negligence" and "proximate cause" and the necessity of proving by a preponderance of the evidence that the negligence of the party complained against was the proximate cause of the resulting injuries, we are satisfied that the absence of an explanatory statement in the instruction with reference to these terms does not constitute prejudicial error.

Appellants urge error in the giving of instruction No. 15 in that it mistakenly informed the jury that the right of way of respondents' car was absolute. The instruction was one of four which informed the jury concerning the rights and duties of the litigants while crossing and turning at an intersection. Appellants also assert that instructions Nos. 13, 14, and 16 were stated in the abstract and not specifically applied to the parties litigant.

Instruction No. 13 included the statutory law defining the duty of the driver who intends to make a left turn at an intersection. Instruction No. 14 contained the rules laid down in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533.

Instruction No. 15 informed the jury that, if the defendant McMains intended to make a left turn and thereby placed the Girardi automobile upon his (McMains') right, it was the duty of the defendant McMains to yield the right of way to plaintiffs Girardi,

and plaintiffs Girardi had the right to assume that the defendant McMains would yield to them such right of way until the driver of plaintiffs' automobile knew, or by the exercise of ordinary diligence should have known, to the contrary. The jury was further instructed that, if the defendant McMains failed to yield to plaintiffs Girardi the right of way under the circumstances outlined in the instruction, and that his failure so to do was the proximate cause of plaintiffs' damages and injuries, their verdict should be for plaintiffs.

Instruction No. 16 stated:

"When two vehicles are approaching an intersection from opposite directions and one intends to make a left turn at the intersection, you are instructed that the right-of-way given by statute to the car which intends to proceed straight through the intersection is not an absolute right but a relative one. Such right-of-way does not relieve the driver of the car which intends to proceed straight through the intersection from the duty of driving in a reasonable, careful and lawful manner but there is at all times the duty imposed upon the driver of such car to drive his car in a reasonable, careful and prudent manner under the existing circumstances and to at all times exercise reasonable care and caution to avoid colliding with a vehicle about to make a left turn. If he does not do so, then he is guilty of negligence."

We cannot agree with appellants' contention that, by instruction No. 15, the jury was instructed that the right-of-way of respondents' car was absolute; and, in any event, instruction No. 16 unequivocally informed the jury that the right-of-way of the driver which intends to proceed straight through the intersection is not an absolute one.

Nor are we able to agree that the instructions were improper because they were stated in the abstract. True, instruction No. 14 merely announced the general rules applicable to drivers of automobiles at intersec-

tions, but instructions Nos. 13, 15, and 16 specifically applied the general principles contained in instruction No. 14 to the parties plaintiff and defendant in this case. Although instruction No. 16 does not refer to the parties by name or as plaintiffs and defendants, the employment of the language "the car which intends to proceed straight through the intersection" referred to the driver on the right, respondent Girardi.

The instructions considered together gave the proper information to the jury concerning the rights, duties, and obligations of the respective parties to this action.

■ Appellants also complain of the giving of instruction No. 27, which sets forth the life expectancy in years of respondents Philip Girardi and Angelin Girardi as of the time of the collision, and of the refusal of the court to give appellants' requested instruction No. 23, relating to the life expectancy of respondents Girardi, not only in years but as such life expectancy was affected by other evidence and surrounding circumstances which were present. Instruction No. 26 properly instructed the jury to consider any extenuating facts or circumstances which might affect the life expectancy, and hence the giving of instruction No. 27 and the refusal to give appellants' proposed instruction No. 23 cannot be said to be error.

■ The refusal of the trial court to give appellants' requested instruction No. 8 also was not error for the reason that it was covered in substance by the instructions given.

Nor are we persuaded that the trial court abused his discretion in refusing to grant a new trial.

The judgment is therefore affirmed.

BLAKE, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.