[No. 36739.   Department Two.   March 5, 1964.]

RUPERT F. ANDERSON, *Respondent*, v. FRANK DOBRO, *Appellant.*\*

*Ferguson & Burdell* and *Wm. Wesselhoeft,* for appellant.

*Miracle, Treadwell & Pruzan,* for respondent.

\*Reported in 389 P. (2d) 885.

Donworth, J.—This case arose out of a rear-end automobile collision which took place at the intersection of Seventh Avenue and Bell Street, in the city of Seattle, while respondent's automobile was stopped waiting for the traffic light to change from red to green.

At the conclusion of the trial, the court directed a verdict in favor of respondent on the issue of liability, and submitted the issue of damages to the jury. Appellant, defendant in the trial court, alleged as a defense to respondent's action that a latent defect existed in the braking system of his station wagon. The jury returned an award of $6,000 as damages for respondent, and the trial court entered judgment accordingly.

In his appeal to this court, appellant relies for reversal upon six assignments of error as follows:

"1. The trial court erred in refusing to permit the repair order (Ex. 17).

"2. The trial court erred in denying the offers of proof by the witness Lloyd Dill, which offers are summarized in the Statement of Facts and incorporated by reference herein.

"3. The trial court erred in granting the respondent's motion for a directed verdict on the issue of liability.

"4. The trial court erred in denying appellant's motion for a mistrial, when respondent's counsel deliberately injected insurance into the case.

"5. The trial court erred in denying appellant's motion for a mistrial when respondent's counsel referred to brake failure in his closing argument.

"6. The trial court erred in denying appellant's motion for a new trial."

Upon direct examination by his counsel, appellant described the accident as follows:

"Q. Did you see the plaintiff's automobile before this impact occurred? A. Yes, sir. Q. And approximately what distance were you from his automobile when you first recall seeing it? . . . A. Well, I observed the car when it was in a, when it was stopped for the signal. The signal was red, and he was in a stopped position. Q. And how far away were you from him when you observed him in that stopped position first? A. Well, this was about a half-block

away. Q. And then what did you do? A. I touched my brakes lightly. Q. You're speaking of your foot brake? A. Yes, sir. Q. How did the foot brake work then? A. It operated fine. It did slow my speed down. Q. And after you had touched your foot brake slightly once, then what did you do? A. Well, I continued a little further and then depressed my brake again. Q. And what happened when you depressed it again? A. Oh, my car went into a skid. I didn't swerve. I was skidding, but straight ahead, straight in the lane, and then I took my foot off of the brake and then I came down on it hard, and then my foot went all the way to the floor before the impact into the other car. . . . Q. Now on up to that point, Mr. Dobro, up to the point where you started in this skid, had you observed any trouble with the brakes on your automobile? A. No, sir. Q. Now, when your foot went down to the floor, what did the car do then? A. It continued to skid. Q. And ultimately, did it come in contact with the rear of the plaintiff's car? A. Yes, sir."

Appellant gave this further description of the accident on cross-examination.

"Q. And, it is your statement however, that you skidded, I think you said, about a quarter of a block? A. Yes, sir. Q. And by that you mean that your wheels were not turning around, but were skidding on the surface of the street? A. Yes, sir. Q. And at the end of this quarter of a block skid, you ran into the rear end of Colonel Anderson's car, is this it? A. That's right. Q. And when you applied the brakes, that started the car into a skid, is this correct? A. Yes. Q. Now, sir, did you have an emergency brake on your car? A. Yes, sir. Q. And that is a separate braking system, not connected with the foot brake? A. I presume. Q. Did you use this emergency brake? A. No, I did not."

A latent defect in the brakes of his vehicle is appellant's only alleged defense. This appeal is concerned chiefly with the trial court's refusal to admit certain evidence which appellant claims would tend to establish the defense. To show the defect in the braking system, appellant offered testimony of a "service salesman" from the company that repaired the station wagon after the accident. The witness' testimony was offered for the purpose of showing, first, that the company for whom he worked was not in the prac-

tice of ordering more work than was necessary to be done to a customer's automobile, and, second, to place in evidence a repair bill (Exhibit 17) claimed to list parts used and repairs made to appellant's station wagon. The offer was in terms of a hypothetical question in which the witness was to give his opinion as to what would happen to an automobile which had defective parts similar to those listed in the repair bill. The offer of proof was rejected by the trial court, who stated that no defect had been shown and he thought that there was no basis shown for the admission of the evidence. Further, the trial court held that appellant was trying to impeach his own testimony, which was not proper.

Appellant also assigns error to the trial court's refusal to admit the repair bill for the purpose of explaining a reason for the brake pedal's going to the floor just prior to the impact and showing that a latent defect in the brakes existed. Appellant claims the repair bill was proper evidence because it would allow an inference to be drawn from an inference. Appellant's counsel also claims that the above offer of proof should have been allowed for the purpose of showing that appellant could be mistaken, and that there could exist a latent defect in the brakes, even though appellant was under the illusion the brakes were holding.

Before appellant could be allowed to show that an inference could be drawn from the repair bill, he first must have demonstrated that it is admissible evidence.

■ When the trial court considered appellant's offer of proof, it had before it clear and uncontradicted testimony by appellant that the brakes of the station wagon were holding, that the brakes were locked, and that his vehicle was skidding at the time of impact. All this was strong evidence that the brakes were operating properly. The only testimony which tended to show that the brakes were not operating properly was a statement by appellant in his testimony that the brake pedal went to the floor just prior to the collision. The repair bill was offered to rebut appellant's testimony, which was itself contradictory. This piece

of evidence was hearsay, for it was offered to prove the fact asserted, that is, that the brakes were defective when the station wagon was repaired. There was no evidence or explanation offered by appellant as to why the person who made the repairs could not have been produced in court to testify as to these matters. Nor did appellant make any showing that the repair bill was admissible under one of the recognized exceptions to the hearsay rule. *Bennington v. Northern Pac. R. Co.*, 113 Wash. 1, 4, 192 Pac. 1073 (1920).

In his brief, appellant's counsel argues that the repair bill should have been admitted for the purpose of contradicting appellant's own testimony. In this situation, the evidence was not offered for the purpose of impeachment of an adverse witness, but for the purpose of contradicting appellant's own testimony. This does not come within any exception to the hearsay rule. Evidence for the purpose of contradiction must be competent evidence.

The question raised by appellant as to whether one inference can be drawn from another inference is never reached because the repair bill from which the first inference is to be drawn was clearly not admissible evidence.

The repair bill being the only evidence offered that would tend to show a latent defect in the brakes, and this evidence being held inadmissible, the trial court was correct in granting respondent's motion for a directed verdict on the issue of liability. Therefore, appellant's third assignment of error is without merit.

Appellant next assigns error to the trial court's failure to grant a motion for a mistrial when counsel for respondent commented in his closing argument to the jury as follows:

"Not only am I a successful plaintiff's lawyer, but I am a successful insurance company defense lawyer. . . ."

This statement was made in response to a comment by appellant's own counsel in his closing argument to the jury, in which he said:

". . . He [respondent] gets in touch with his law professor son and his law professor son recommends to him a lawyer well known as a plaintiff's personal injury lawyer whom the son does not individually know but knows only

by reputation. So a successful plaintiff's personal injury lawyer is brought into this case. . . ."

■ We have held that it is reversible error to deliberately inject into a case the fact that a defendant carries liability insurance. *King v. Starr*, 43 Wn. (2d) 115, 260 P. (2d) 351 (1953), and cases cited. However, we do not think those cases are in point. In the present case, appellant's counsel invited the comment which was made by respondent's counsel. Nor do we think the comment prejudicial to appellant since it refers only to respondent's counsel and not to whether appellant may have been covered by liability insurance.

Appellant's fifth assignment of error is directed to the trial court's failure to grant a mistrial when respondent's counsel also stated in his closing argument:

" . . . He constructed a defense out of a brake failure, and even the Judge saw through that. . . ."

Appellant's counsel moved for a corrective instruction as an alternative to a new trial. The trial court granted the request and called the jury back from its deliberations for a corrective instruction.[1] This cured any prejudice which might have otherwise resulted from the incident.

■ The granting of a motion for mistrial, as well as for a new trial, is discretionary with the trial court. *Riley v. Department of Labor & Industries*, 51 Wn. (2d) 438, 319 P. (2d) 549 (1957). There was no abuse of discretion in the trial court's denial of appellant's motion for a new trial for the same reason as just stated with respect to the denial of the motion for a mistrial, to wit, the instruction given

---

[1] "Additional Instruction Number 1. The jury is instructed that during the answering argument of counsel for the plaintiff, reference was made to matters pertaining to the defense offered by the defendants in relation to brakes, and the courts view of the same.

"You are instructed that this was improper argument both as mentioning matters pertaining to liability which issue the court had already taken from the jury, and secondly as indicating a view of the court with regard to evidence offered by the defendant.

"You are therefore instructed to completely disregard the reference to the defense theory and evidence, above referred to."

was sufficient to remove any prejudice generated by the comment of respondent's counsel.

We find no merit in any of appellant's assignments of error. Therefore, the judgment entered upon the verdict of the jury should be affirmed. Accordingly, the judgment appealed from is hereby affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.