[No. 38377.   Department Two.   January 5, 1967.]

KADIAK FISHERIES COMPANY, *Respondent,* v. MURPHY DIESEL COMPANY, INC., *Appellant,* ALASKA PACIFIC SUPPLY COMPANY, *Respondent.** 

*Reported in 422 P.2d 496.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* by *W. Paul Uhlmann* and *James M. Lindsey, Jr.,* for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Ronald E. McKinstry, Peter D. Byrnes,* and *Dan P. Hungate,* for respondent Kadiak Fisheries Company.

*Elliott, Lee, Carney & Thomas* and *James A. Holman,* for respondent Alaska Pacific Supply Company.

HAMILTON, J.—In the fall of 1960 respondent Kadiak Fisheries Company (hereafter referred to as Kadiak) decided to repower one of its salmon fishing and cannery tending vessels, the *Jaguar,* and adapt it to crab fishing. Kadiak's principal officer discussed the project with the president of Alaska Pacific Supply Company (hereafter referred to as Alaska Pacific), the Western Washington "Sales Agent"[1] for appellant, Murphy Diesel Company, Inc.

---

[1] Alaska Pacific is so designated in the written agreement between it and Murphy Diesel. Murphy Diesel, however, contends there is no principal-agency relationship between them.

(hereafter referred to as Murphy Diesel), an out-of-state manufacturer of industrial and marine diesel engines. These discussions culminated in Kadiak's desires and needs being communicated to Murphy Diesel through Alaska Pacific as well as through a regional sales employee of Murphy Diesel, an acceptance of the order by Murphy Diesel, and the sale and delivery, in early 1961, of a newly developed 325 horsepower, dry manifold,[2] marine diesel motor, especially constructed to fit the bed of the *Jaguar*. After installation of the motor, which was attended and participated in at various times by representatives of all parties, a variety of operational difficulties developed, which Murphy Diesel, for the most part, attempted from time to time to remedy without cost to Kadiak. Included among the several difficulties were exhaust and lubricating oil temperatures which Kadiak asserted were excessive and which Murphy Diesel contended were normal for the motor.

As a result of these engine difficulties, and the damages allegedly caused thereby, Kadiak initiated this suit in 1963, first against Murphy Diesel and later against Alaska Pacific asserting negligence and breach of implied warranties of fitness and merchantability. The damages which Kadiak sought revolved around a fire aboard the *Jaguar*, purportedly due to excess exhaust temperatures, which destroyed the pilot house, damaged cargo, and which, coupled with other asserted motor failures or defects, caused delay and loss of profits from fishing operations.

Murphy Diesel and Alaska Pacific, respectively, denied negligence and any breach of warranty and affirmatively alleged improper installation of the motor and contributory negligence. In addition, Murphy Diesel alleged lack of privity of contract between it and Kadiak, and Alaska Pacific asserted a cross-claim over against Murphy Diesel.

The cause came on for trial before a jury late in 1964. Presentation of the evidence, including the testimony of 17 witnesses and the introduction of numerous exhibits, con-

---

[2] A dry manifold system is one that is cooled by air rather than water.

sumed some 11 days. At the conclusion of Kadiak's evidence, Alaska Pacific was allowed to amend its pleadings, over Kadiak's objection, to assert the defense of estoppel against Kadiak. At the end of all of the evidence, Kadiak's claims of breach of warranty against Alaska Pacific and Alaska Pacific's defense of estoppel against Kadiak and cross-claim against Murphy Diesel were withdrawn from the jury. The issues of negligence, breach of implied warranties, privity of contract, contributory negligence, and damages, as such remained between the parties, were then submitted to the jury. The jury returned a verdict assessing damages against Murphy Diesel in the amount of $29,529.09 and exonerating Alaska Pacific. Murphy Diesel has appealed from the judgment entered upon the verdict. Since the appeal, Kadiak, Murphy Diesel, and Alaska Pacific have stipulated in writing before this court that Alaska Pacific is not a party respondent in the appeal, that the appeal is limited to the controversy between Kadiak and Murphy Diesel, and that in the event of a new trial Alaska Pacific would not be included as a party defendant. In short, they have stipulated that the verdict of the jury and the judgment of dismissal as to Alaska Pacific is final.

On the appeal, Murphy Diesel makes 22 assignments of error, which it argues under 10 subheadings. These arguments in turn essentially pivot about claims of error growing out of the admission or rejection of certain evidence, the giving or refusal of certain instructions, and the denial of challenges to the sufficiency of the evidence.

In the evidentiary category, Murphy Diesel assigns error to the admission into evidence of certain testimony of the president of Alaska Pacific, offered in support of Alaska Pacific's claim of estoppel against Kadiak. The challenged testimony is as follows:

Q. Now, passing on to the conference in Mr. McKinstry's [counsel for Kadiak] office, do you recall going to that conference? A. Yes, very definitely. Q. What did Mr. Turner [Kadiak's principal officer] tell you in that conference with respect to Alaska Pacific's position on this engine problem? A. The only thing I can say is that Mr.

Turner assured me, and as I remember him saying, that he didn't want to see me or Alaska Pacific hurt in that action they were going to take against Murphy Diesel. Q. Was Mr. McKinstry present when he said that? A. Well, we were in Mr. McKinstry's office at the time the discussion took place. In fact, Mr. McKinstry made a remark to me that he felt Chuck Turner was a real good friend of mine. Q. *Did you decide to do anything as a result of that conference to protect Alaska Pacific Supply?* A. *No, we didn't even notify our insurance carrier at that time, because we didn't think we were going to be involved.* Q. When were you sued, do you recall? A. No, but it seems to me it was the next fall, quite a bit of time later. Q. The fall of 1963? A. It could have been, I don't remember. Q. *And did you instruct your attorneys to, ask your attorneys to tender the defense of this law suit to an insurance company?* A. *I did.* Q. *What is the name of that company?* A. *I believe it was the Massachusetts Bonding & Indemnity or Indemnity & Bonding, I don't recall exactly.* Q. *Have they accepted tender or defended this action?* A. *To my knowledge they have not, no.* (Italics ours.)

This testimony followed testimony of the principal officer of Kadiak, earlier elicited by Alaska Pacific on cross-examination, inferring that Kadiak and its counsel had obtained pertinent documentary evidence from Alaska Pacific on the premise that Kadiak was looking only to Murphy Diesel for its damages.

Both Kadiak and Murphy Diesel, in the absence of the jury, registered objection to the admission of the italicized testimony. These objections were overruled upon the ground that the evidence was relevant as tending to support Alaska Pacific's defense of estoppel. After the noon recess, which then occurred, Murphy Diesel, again in the absence of the jury, moved for mistrial. This motion was predicated principally upon the ground that prejudice would flow to Murphy Diesel in connection with Alaska Pacific's cross-claim. Kadiak did not join in this motion. It was denied upon the basis that the evidence was not prejudicial to Murphy Diesel. No further motions (*i.e.*, to limit the jury's consideration of the testimony or to instruct the jury to disregard the testimony or Alaska Pacific's defense

of estoppel) were then or later made although, as heretofore indicated, Alaska Pacific's cross-claim and defense of estoppel were subsequently withdrawn from the jury's consideration, the latter over its objection. The only alternative suggestion offered by Murphy Diesel, at the time of its objection to the testimony, was that the jury be advised that it carried no insurance. This suggestion was rejected and the challenged testimony was otherwise permitted to remain in suspense.

Murphy Diesel now insists that the quoted and italicized testimony carried the inference that it was protected by insurance while its codefendant, Alaska Pacific, was not, and that the prejudice arising from such inference was so indelibly engraved upon the jury's mind as to effectively preclude any remedy short of mistrial. Furthermore, Murphy Diesel asserts the insurance matter was deliberately injected into the case by Alaska Pacific and was tantamount to a plea of poverty.

We cannot agree with Murphy Diesel's contention that the challenged testimony compelled a mistrial at the time of its introduction, nor that it warrants a new trial now as between Murphy Diesel and Kadiak.

At the outset it must be borne in mind that, though we have not exhaustively recited it, the evidence of mechanical and operational defects in the motor in question, and the difficulties flowing therefrom, was substantial and amply sufficient to warrant and sustain a finding of liability on the part of the manufacturer. Furthermore, under the issues as ultimately framed and submitted to the jury, the theories of responsibility and liability as between Murphy Diesel, the manufacturer, and Alaska Pacific, the sales conduit, were not equal—Murphy Diesel could be found liable upon either one of two theories (breach of warranty or negligence), whereas Alaska Pacific's liability was restricted to the theory of negligence in connection with the sale and installation of the motor. Thus, it becomes highly speculative to opine or assume that the jury placed the responsibility upon Murphy Diesel and exonerated Alaska Pacific simply because it felt Murphy Diesel was insured and Alaska

Pacific was not. The integrity of our jury system warrants more faith in the sincerity and probity of the average juror than such conjecture suggests.

Also it must be observed that there is nothing in the record to indicate that Kadiak encouraged, consented to, or played any part in the injection of any element of insurance into the case. It objected, without avail, first to the introduction of the issue of estoppel and, secondly, to the reception of the evidence bearing on insurance. From aught that appears in the record, Kadiak was as surprised and aggrieved by the turn of events as Murphy Diesel. Manifestly, it would be unfair to submit Kadiak to the expense of a new trial because of a reference to insurance over which it exercised no control and which was injected by an adverse party in an effort to establish a defense. On the other hand, of course, it cannot be said from the record that Murphy Diesel in any manner suggested or invited the reference to insurance. However, as a codefendant with Alaska Pacific, it did, in some respects at least, stand shoulder to shoulder with its codefendant in the over-all effort to defeat, disparage, or diminish Kadiak's claim. From this standpoint, then, it necessarily carried a greater responsibility than did Kadiak to assume the risk of error being injected into the record by its codefendant. Consequently, a greater duty fell upon Murphy Diesel to endeavor to cure or alleviate such error by proposing appropriate limiting or admonitory jury instructions for the trial court's consideration. Particularly would this appear to be so in the instant case where it later developed that its codefendant's cross-claim and defense of estoppel were withdrawn from the jury. Murphy Diesel could not then, if it wished to preserve and subsequently claim the benefit of its codefendant's error against Kadiak, the plaintiff, simply content itself with a demand for mistrial. In this respect, its suggestion, at the time of its initial objection, that the jury be advised that it carried no insurance did not suffice, for that would have tended to compound the circumstance rather than alleviate it.

160

Furthermore, we are not convinced, under all of the circumstances, that the challenged testimony embraced such a purposeful, aggravated, inflammatory and unerring reference to Murphy Diesel's insurance status as to render an appropriate limiting or cautionary jury instruction either ineffectual or suggestive.

██ We have often held that where the circumstance that a defendant is or might be covered by insurance is injected into a case innocently, inadvertently, by invitation, or in relation to some issue, such revelation is not grounds for mistrial. It is only when the collateral matter is clearly inserted deliberately, wantonly, or collusively for the purpose of prejudicing the jury that it calls for mistrial or new trial. See, for example, *Edwards v. Burke*, 36 Wash. 107, 78 Pac. 610 (1904); *Robinson v. Hill*, 60 Wash. 615, 111 Pac. 871 (1910); *Armstrong v. Yakima Hotel Co.*, 75 Wash. 477, 135 Pac. 233 (1913); *Moy Quon v. Furuya Co.*, 81 Wash. 526, 143 Pac. 99 (1914); *Jensen v. Schlenz*, 89 Wash. 268, 154 Pac. 159 (1916); *Gianini v. Cerini*, 100 Wash. 687, 171 Pac. 1007 (1918); *Rust v. Washington Tool & Hardware Co.*, 101 Wash. 552, 172 Pac. 846 (1918); *Skoug v. Minton*, 145 Wash. 119, 259 Pac. 15 (1927); *Lander v. Shannon*, 148 Wash. 93, 268 Pac. 145 (1928); *Gaskill v. Amadon*, 179 Wash. 375, 38 P.2d 229 (1934); *Carlson v. P. F. Collier & Son Corp.*, 190 Wash. 301, 67 P.2d 842 (1937); *Williams v. Hofer*, 30 Wn.2d 253, 191 P.2d 306 (1948); *Anderson v. Dobro*, 63 Wn.2d 923, 389 P.2d 885 (1964).

In the instant case, Alaska Pacific was permitted to amend its answer to affirmatively assert estoppel against Kadiak, over Kadiak's objection. This was upon the basis of evidence, elicited from Kadiak's principal officer on cross-examination during Kadiak's case in chief, inferring that Kadiak had taken unfair advantage of Alaska Pacific. The pretrial behavior of Kadiak and the detriment to Alaska Pacific thus became an issue in the case, without objection by Murphy Diesel. The now challenged testimony followed on the heels of further testimony purporting to attribute questionable conduct to Kadiak and its counsel. In this

context, the principal thrust was to discredit, if not prejudice, Kadiak in the eyes of the jury, rather than to cast the mantle of wealth upon Murphy Diesel.

Under these circumstances we are not persuaded that Alaska Pacific wantonly, deliberately, or collusively injected the evidence for the purpose of prejudicing Murphy Diesel, nor that any incidental prejudice arising therefrom was of such a magnitude as to compel a mistrial or negative a proper instruction.

The principal cases cited by Murphy Diesel in support of a contrary view are distinguishable. In *Graves v. Boston & Maine R.R.,* 84 N.H. 225, 149 Atl. 70 (1930), the challenged evidence was unrelated to any issue in the case and was injected by the plaintiff. In *Rojas v. Vuocolo,* 142 Tex. 152, 177 S.W.2d 962 (1944), counsel for the plaintiff encouraged and invited the error. In *Derrick v. Rock,* 218 Ark. 339, 236 S.W.2d 726 (1951), the circumstances were such as to render the offending party a coplaintiff. And, in *King v. Starr,* 43 Wn.2d 115, 260 P.2d 351 (1953), the challenged fact was deliberately injected by a single defendant after an adverse ruling of the court. We do not deem these cases determinative of the instant situation.

Accordingly, we find no reversible error on this score.

Murphy Diesel's next assignment of error in the evidentiary category relates to the trial court's rejection of an offer of proof by which it proposed to show an admission against interest made by an employee of Kadiak.

Briefly, the circumstances giving rise to this claim of error are as follows: Kadiak premised a substantial part of its claim for damages upon the fire which destroyed the pilothouse of the *Jaguar.* It contended that this fire was the result of the alleged excessive exhaust temperatures generated by the new motor. Murphy Diesel, on the other hand, contended that the fire was caused by burning carbon particles emitted from the exhaust stack of the *Jaguar,* which resulted from Kadiak's failure to properly clean the stack at the time the new engine was installed. In support of its theory Murphy Diesel offered to show, by the testimony of

one of its service men, that Kadiak's port engineer and chief mechanic, who participated in the installation of the motor but was not aboard the vessel at the time of the fire, stated some 4 to 5 months after the fire "that they had concluded, as a result of the information they had, that the fire to the pilot house was caused by burning carbon or other particles coming out of the stack and landing on the top of the pilot house."

The trial court, in rejecting the offered evidence, stated:

I think, gentlemen, the objection is well taken for this reason: I think it is clearly hearsay. None of us could argue about that. Alf Anderson could have no first-hand knowledge whatever concerning the fire. Anything he learned, he would have had to learn from someone else, from what someone else told him, and starting out on that basis, that it is hearsay and not admissible under our concept of the presentation of proper evidence, it would have to then fall within some of the recognized exceptions to the hearsay rule, and the only one that has been suggested to me, as I have followed the statements of counsel, is that this should be construed as an admission against interest by a party to the action, and then, of course, we run head-on into the problem of agency, the party being a corporation.

It seems to me there is no basis, no evidence in this case upon which I could possibly rule that Alf Anderson was authorized to speak for the corporation in this regard.

As far as the offer of proof is concerned, that was a conversation between Mr. Anderson of Kadiak and Mr. Sprague of Murphy Diesel, at a time when they were both concerned with the repair of the engine on the boat. Certainly there is nothing in that activity on the part of Alf Anderson that would suggest he had been given any authority by Kadiak to speak for them on the matter of the cause of the fire, which would very likely become the subject of litigation.

For these reasons, I feel the objection is well taken . . . .

We think the trial court ruled correctly.

The applicable rules are stated in Restatement (Second), Agency §§ 286 and 288 (1958):

In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter. § 286.

(1) The general rules concerning the interpretation of authority are applicable in determining whether an agent has authority to make statements concerning operative or other facts.

(2) Authority to do an act or to conduct a transaction does not of itself include authority to make statements concerning the act or transaction.

(3) Authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts. § 288.

▮ In the instant case, the evidence revealed that Kadiak's employee (Alf Anderson) was engaged to keep and maintain Kadiak's fleet of fishing vessels in mechanical running order. To this end he was employed and authorized to supervise other employees, perform pertinent acts, and report to his superiors. There was no evidence from which it could be reasonably inferred that his employment embraced the authority to issue, on behalf of his employer, narrative statements to third persons concerning past events of which he had no direct knowledge or to investigate, interpret, and publish the reports of other employees. Furthermore, there is no evidence whatsoever that the pertinent employee was at any time authorized to admit liability for or speculate publicly upon the cause of the fire because of any information coming to him from his employer. The situation is distinguishable from that presented in *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964), upon which Murphy Diesel relies. That case involved statements by the resident engineer of the Port of Seattle with substantially greater delegated responsibility than appears here.

As heretofore indicated, we find no error in the trial court's ruling.

We turn then to the second category of assigned errors—that of instructions given and refused. All but two

of the claimed errors in this regard arise out of instructions dealing with or related to the doctrine of privity of contract as between Kadiak and Murphy Diesel.

At the outset, it might well be observed that this case offers an invitation for "a realistic, judicial analysis and reappraisal of the privity rule." *Freeman v. Navarre,* 47 Wn.2d 760, 289 P.2d 1015 (1955). However, such a reappraisal has not been briefed nor urged upon us by the parties, and, as in the *Freeman* case, it is unnecessary in view of our disposition of the assignments of error concerning privity.

Throughout the trial it was Kadiak's theory that privity of contract was established and existed because (a) Alaska Pacific was an agent of Murphy Diesel, or (b) Alaska Pacific was the agent of Kadiak in the transaction, or (c) Kadiak was the third-party beneficiary of a sales contract between Alaska Pacific and Murphy Diesel. Murphy Diesel denied privity, asserting that the relationship between it and Alaska Pacific was that of vendor and vendee, with Kadiak as the remote purchaser from Alaska Pacific.

With these various contentions before it, the trial court submitted the issues arising therefrom to the jury, and it is to the instructions and the refusal to give additional proposed instructions in this vein that Murphy Diesel's assignments of error principally run.

■ We find no prejudicial error flowing to Murphy Diesel from the action of the trial court. We reach this conclusion because, accepting Murphy Diesel's thesis that its relationship with Alaska Pacific was that of vendor and vendee, we are convinced from our review of the statement of facts that the evidence conclusively established Kadiak as the third-party beneficiary of the sale of the motor in question by Murphy Diesel. *Jeffery v. Hanson,* 39 Wn.2d 855, 239 P.2d 346 (1952).

Murphy Diesel knew the identity, the purpose, and requirements of Alaska Pacific's customer—Kadiak. It engineered and constructed the motor to meet certain specifications, *e.g.*, the bed of the *Jaguar*, furnished to it not only by Alaska Pacific but by one of its own regional sales

representatives. Although it invoiced the motor through Alaska Pacific, it shipped the motor direct to Kadiak. Some communications were carried on directly between Kadiak and the factory before and after shipment. An official of the company, the regional sales representative, and a factory service man visited the *Jaguar* on various occasions before and during installation of the motor and the service man participated in adjustments and corrections for the final trial run. After the fire and after further mechanical troubles developed Murphy Diesel furnished new parts and dispatched factory service men to correct the situation, at the behest of Alaska Pacific as well as Kadiak. Under these circumstances, it is beyond dispute that Alaska Pacific's purchase of the motor from Murphy Diesel was upon the consideration that a merchantable motor, fit and suitable for the marine purposes of Kadiak, would be supplied. Kadiak thus became the beneficiary of the contract, with Alaska Pacific as the conduit through which the duty of ordinary care and the implied warranties of merchantability and fitness flowed. *Jeffery v. Hanson, supra.*

We find no basis in logic or reason for distinguishing the *Jeffery* case, *supra*, upon the basis that it dealt only with express warranties.

We conclude that the trial court should have held as a matter of law that there was privity between Kadiak and Murphy Diesel. Murphy Diesel was not, therefore, prejudiced by having the issue submitted to the jury.

■ Murphy Diesel next assigns error to the trial court's refusal to submit proposed interrogatories to the jury. We have held that this is a matter resting in the sound discretion of the trial court. *Brown v. Intercoastal Fisheries, Inc.,* 34 Wn.2d 48, 207 P.2d 1205 (1949); *Cunningham v. Town of Tieton,* 60 Wn.2d 434, 374 P.2d 375 (1962). We find no abuse of discretion on this score in the instant case.

Lastly, in the instructional category, Murphy Diesel assigns error to the instruction setting forth the measure of damages for loss of profits. The challenged instruction reads:

You are instructed that loss of profits are prospective and must to some extent, be uncertain and problematical. The law does not require absolute certainty of data upon which loss of profits are to be estimated, *but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture.* Profit is ordinarily understood to mean the amount of the difference between the income received from a particular business operation less the amount of all costs reasonably and necessarily incurred in producing that income. (Italics ours.)

Complaint is directed primarily to the italicized portion of the instruction, which Murphy Diesel contends permits or suggest speculation and conjecture on the part of the jury.

We cannot approve the instruction in the form given for, by the use of the word "wholly," it becomes, as Murphy Diesel asserts, somewhat ambiguous and suggestive. However, we do not deem that it is prejudicially erroneous in this case.

■ The rules applicable to the recovery of lost profits as special damages are summarized in *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 390 P.2d 677 (1964), at 15:

Are lost profits recoverable? The modern view is that they are properly recoverable as damages when (1) they are within the contemplation of the parties at the time the contract was made, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty. See *Hole v. Unity Petroleum Corp.*, 15 Wn. (2d) 416, 131 P. (2d) 150; McCormick on Damages § 25.

The first rule poses no problem, for it was clearly foreseeable that if the contract was breached there would be lost profits on national sales. Most contracts are motivated by the expectation of future profits. If such profits are within the contemplation of the parties at the time the contract is made, they may form the measure of damage. *Federal Iron & Brass Bed Co. v. Hock*, 42 Wash. 668, 85 Pac. 418; *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205, 4 N.E. 264; Restatement, Contracts § 330.

The second rule requires certainty as to the fact that damage resulted from defendant's breach. *Dunseath v.*

*Hallauer,* 41 Wn. (2d) 895, 253 P. (2d) 408; *Gaasland Co. v. Hyak Lbr. & Millwork,* 42 Wn. (2d) 705, 257 P. (2d) 784.

The third rule requires that lost profits must be proven with reasonable certainty or conversely, damages which are remote and speculative cannot be recovered. *Bromley v. Heffernan Engine Works,* 108 Wash. 31, 182 Pac. 929; *National School Studios v. Superior School Photo Ser.,* 40 Wn. (2d) 263, 242 P. (2d) 756.

. . . .

A measuring stick, whereby damages may be assessed within the demarcation of reasonable certainty, is sometimes difficult to find. Plaintiff must produce the best evidence available and

" . . . if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the amount of the damage is incapable of exact ascertainment. . . ." *Dunseath v. Hallauer, supra,* p. 902.

In the instant case there can be little doubt under the evidence that Murphy Diesel was aware of the fishing function and purpose of the *Jaguar* in Kadiak's fleet. It was advised that the vessel was being repowered to continue its operations. There could, therefore, be virtually no question as to the fact that loss of fishing time due to motor difficulties would result in a diminution of profits. Likewise, the evidence leaves little room for argument that the *Jaguar* did lose time as a result of motor troubles. The only element remaining, then, for dispute is the certainty of the amount of the lost profits occasioned by the *Jaguar's* incapacitation due to engine repairs. On this factor, however, Kadiak produced uncontradicted evidence revealing the average daily crab deliveries of other comparable vessels fishing in the same area in which the *Jaguar* was fishing on the occasions immediately prior to engine breakdowns. It also produced undisputed evidence bearing upon the average prices paid for the pertinent catches and the usual cost of operation. Under these circumstances, the jury was not required to speculate. It had only to weigh the credibility of the witnesses, for it was presented with a reasonable basis upon which to determine the amount of the loss. The

168

ambiguity in the challenged instruction was, consequently, nonprejudicial.

In the third category of assignments of error, Murphy Diesel asserts the trial court erred in denying its challenges to the sufficiency of the evidence to warrant submitting the various issues to the jury. What we have heretofore said disposes of the principal contentions in this respect. We need add only that our review of the record satisfies us that there was substantial evidence presented upon the issues of negligence, breach of the implied warranties of fitness and/or merchantability, notice, and damages to warrant their submission to the jury, and to sustain the jury's verdict.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY and HALE, JJ., and BARNETT, J. Pro Tem., concur.